United States Court of Appeals,

Fifth Circuit.

No. 93-8366

Summary Calendar.

WESTERN HORIZONTAL DRILLING, INC., Plaintiff-Appellee,

v.

JONNET ENERGY CORPORATION, et al., Defendants,

E.J. Jonnet and Joe Jonnet, Defendants-Appellants.

Jan. 12, 1994.

Appeal from the United States District Court For the Western District of Texas.

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

E.J. Jonnet and Joe Jonnet ("the Jonnets") appeal the district court's summary judgment for Western Horizontal Drilling ("Western"). Because we find no genuine issue of material fact exists, we affirm the district court.

## I. FACTS AND PROCEDURAL HISTORY

In April 1991, Western sued the Jonnet Energy Corporation ("Jonnet Energy") in Texas state court to collect an outstanding debt of $196,194.03 for services and materials rendered on one of Jonnet Energy's oil wells. Later that month, Jonnet Energy removed the suit to federal court. Western later joined Jontex Energy Corporation ("Jontex"), E.J. Jonnet, and Joe Jonnet as defendants in an attempt to pierce Jonnet Energy's corporate veil. In June 1992, Western sent the defendants, *inter alia,* several requests for admission. For purposes of this appeal, the relevant requests for admission sent to E.J. and Joe Jonnet, individually, read as follows:

> *Request for Admission No. 1:* Jonnet Energy Corporation is merely a conduit for your personal finances and business transactions.

> *Request for Admission No. 2:* Jontex Energy, Inc. is merely a conduit for your personal finances and business transactions.

The Jonnets never responded to Western's requests, thereby deeming them admitted pursuant to

federal rules. FED.R.CIV.P. 36(a).

Western moved for summary judgment based on the deemed admissions. With regard to the Jonnets, Western argued that it should be permitted to pierce Jonnet Energy's corporate veil because the Jonnets were "alter egos" of the corporations. The defendants did not contest summary judgment as to Jonnet Energy and Jontex. E.J. and Joe Jonnet, however, opposed summary judgment as to themselves. They originally argued that the deemed admissions did not, by themselves, establish personal liability under the alter ego theory of piercing the corporate veil. In November 1992, the district court granted summary judgment for Western, stating that the Jonnets' deemed admissions were "the very definition of "alter ego' as provided" by Texas law.[1] The Jonnets then moved to alter the court's judgment, this time arguing that the alter ego theory had been superseded by amendments to the Texas Business Corporation Act in 1989. The district court in May 1993 denied the Jonnets' motion on the ground that the amendment neither abolished nor modified the alter ego theory. The Jonnets now appeal.

## II. DISCUSSION

### A. Standard of Review

We review a summary judgment de novo, applying the same standard as the district court. *D.E.W., Inc. v. Local 93, Laborers' Int'l. Union,* 957 F.2d 196, 199 (5th Cir.1992); *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991). Therefore, summary judgement is appropriate if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

### B. Texas Law Regarding the Alter Ego Theory

The fundamental concept of corporate law is that the corporation is a wholly separate, legal entity. As such, the corporation, and not its shareholders, is liable for its own debts and torts. *Krivo Indus. Supply Co. v. National Distillers and Chem. Corp.,* 483 F.2d 1098, 1102-03 (5th Cir.1973).

---

[1]In addition to actual damages, Western also had sued the defendants for exemplary damages and incorporated this issue in its summary judgment motion. The district court denied summary judgment as to exemplary damages and sent the issue to trial. After a bench trial, the court denied Western exemplary damages. Western does not appeal the court's ruling.

Nonetheless, under Texas law, courts do not hesitate to ignore the corporate form when it "has been used as part of a basically unfair device to achieve an inequitable result." *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986). In the landmark *Castleberry* case, the Texas Supreme Court listed six situations in which Texas courts may pierce the corporate veil:

(1) when the fiction is used as a means of perpetrating a fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Castleberry,* 721 S.W.2d at 272.

To better understand *Castleberry,*[2] we have interpreted the case as establishing three broad categories in which a court may pierce a corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud. *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 (5th Cir.1993); *Fidelity & Deposit Co. v. Commercial Casualty Consultants, Inc.,* 976 F.2d 272, 274-75 (5th Cir.1992). Thus, alter ego is but one of several methods for piercing the corporate veil. The *Castleberry* court defined alter ego as when "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry,* 721 S.W.2d at 272; *see also Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458-59 (5th Cir.1992); *Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106, 1130-33 (5th Cir.1988). The *Castleberry* court further established that alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over

---

[2]We have stated several times that *Castleberry* is a confusing opinion. *See, e.g., Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1287 (5th Cir.1988); *Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106, 1131-33 (5th Cir.1988).

the corporation, and whether the corporation has been used for personal purposes." *Id.*

The *Castleberry* decision significantly curtailed shareholders' rights relative to common law corporate disregard theory. In response,[3] the Texas legislature amended its Business Corporation Act in 1989 to read, in part:

A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted shall be under no obligation to the corporation or to its obligees with respect to:

\* \* \* \* \* \*

(3) any contractual obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including without limitation: (a) the failure to comply with any requirement of this Act or of the articles of incorporation or bylaws of the corporation; or (b) the failure to observe any requirement prescribed by this Act or by the articles of incorporation or bylaws for acts to be taken by the corporation, its board of directors, or its shareholders.

TEX.REV.CIV.STAT.ANN. art. 2.21 A(3) (Vernon Supp.1993). The amendments overruled *Castleberry* to the extent that a failure to observe corporate formalities is no longer a factor in proving the alter ego theory in contract claims. *Farr v. Sun World Sav. Ass'n,* 810 S.W.2d 294, 296 (Tex.App.1991); *Villar,* 990 F.2d at 1496 n. 8 & 1500; *Fidelity & Deposit Co.,* 976 F.2d at 275.[4] Thus, to pierce the corporate veil using the alter ego theory in a contract claim, the claimant must look to the remaining factors outlined in *Castleberry.*

## C. The Jonnets' First Argument

Before addressing the merits of the case on appeal, the Jonnets first argue that the amendments did, in fact, abolish the alter ego doctrine in contract claims because the failure to

---

[3]The legislature was responding to the "uproar in the business community over the ramifications of *Castleberry* on stockholder liability." *Farr v. Sun World Sav. Ass'n,* 810 S.W.2d 294, 296 (Tex.App.1991). One commentator stated that "[t]he public policy of encouraging business formation and capital investment was too vital to the troubled Texas economy to allow the court's decision to stand as a dangerous new precedent for shareholder liability." Boyce L. Graham, *Navigating the Mists of Metaphor: Examination of the Doctrine of Piercing the Corporate Veil,* 56 J.AIR L. & COM. 1135, 1177 (1991).

[4]The amendments also eliminated constructive fraud as a means of piercing the corporate veil in contract claims. TEX.REV.CIV.STAT.ANN. art. 2.21 A(2) (Vernon Supp.1993). To pierce the corporate veil in contract claims, actual fraud must be proven. The amendments preserved the right to use either actual or constructive fraud to pierce the corporate veil in *tort* claims. *Farr,* 810 S.W.2d at 296.

observe corporate formalities is the very essence of the alter ego theory. Therefore, they argue, if the legislature has concluded that claimants in contract actions can no longer point to a failure to observe corporate formalities to pierce the corporate veil, then *ergo* the legislature has abolished the alter ego doctrine entirely. The Jonnets rely on our opinion in *Pan Eastern Exploration,* 855 F.2d 1106. In that case, we parsed *Castleberry* and identified three distinct strands of corporate disregard theory. We remarked that "there is nothing in the alter ego strand to suggest that anything more is required than the failure of the owners to maintain the corporation as a distinct legal entity." *Pan Eastern Exploration,* 855 F.2d at 1132. The Jonnets insist that our description of the alter ego doctrine is co-extensive with the language used in the amendments to article 2.21, meaning the alter ego doctrine, as we described it in *Pan Eastern Exploration,* has been abolished.

We reject the Jonnets' argument. A "failure to observe any corporate formality," TEX.REV.CIV.STAT.ANN. art. 2.21 A(3), is *not* synonymous with a "failure of the owners to maintain the corporation as a distinct legal entity." *Pan Eastern Exploration,* 855 F.2d at 1132. The language we used in *Pan Eastern Exploration* relies significantly on *Castleberry.* The Texas Supreme Court emphasized the significance of legal distinctness: "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased." *Castleberry,* 721 S.W.2d at 272. Prior to the amendments to article 2.21, one component of demonstrating that that "separateness" no longer existed was pointing to a failure to observe corporate formalities. The amendments now preclude the use of such information in proving alter ego to pierce the corporate veil. *Villar,* 990 F.2d at 1496 n. 8 & 1500; *Fidelity & Deposit Co.,* 976 F.2d at 275. At least one Texas court since enactment of the amendments supports our reasoning. *See Farr,* 810 S.W.2d at 296.[5]

---

[5]We recognize that the Texas Supreme Court seems to be ignoring the amendments to article 2.21 and continues to permit a failure to observe corporate formalities as a means of proving alter ego. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990); *see also Coastal Shutters & Insulation, Inc. v. Derr,* 809 S.W.2d 916, 921 (Tex.App.1991). *Contra* Robert F. Gray, Jr., et al., *Corporations,* 45 Sw.L.J. 1525, 1541 (1992) ("many times [Texas] courts still mistakenly fail to apply these legislative amendments when piercing the corporate veil"). However, because we find the amendments to article 2.21 clear and unambiguous, our interpretation of the statute starts and finishes there.

D. The Jonnets' Second Argument

Having established that the alter ego doctrine is alive and well in Texas, albeit modified by the amendments to article 2.21, we now must address the Jonnets' argument on the merits, i.e., whether summary judgment for Western was appropriate. The Jonnets contend that, assuming the alter ego doctrine exists in Texas, Western failed to proffer evidence that would demonstrate (1) the Jonnets had an ownership interest in Jonnet Energy and (2) an injustice would result if the corporation was held liable.

We reject this argument, too, *not* because Western need not proffer such evidence but because the evidence, when viewed in a light most favorable to the Jonnets, leaves no genuine issue of material fact as to whether Jonnet Energy was the Jonnets' alter ego. Moreover, we note that the Jonnets have never, either in their responses to Western's motion for summary judgment or in their motion to alter or amend the district court's summary judgment against them, or elsewhere, proffered or pointed to any summary judgment evidence, or even alleged any fact, tending to indicate that they had no (or only minority) ownership in Jonnet Energy or that an injustice would not result if the corporate veil were not pierced, or any other factor indicating that the corporate veil should not be pierced. In such a context, the Jonnets' deemed admissions, though few in number, speak volumes.[6] *Castleberry* defines alter ego as when "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry,* 721 S.W.2d at 272. In our own alter ego

---

[6]We also note that among the Western interrogatories to the Jonnets to which they wholly failed to make any answer whatever were the following:

> *INTERROGATORY NO. 3.:* With respect to the subject cause of action, describe with specificity those facts and theories which you contend to refute any of Western's claims or substantiate any of your defenses, and explain.

> *INTERROGATORY NO. 19.:* Have you ever represented on your stationery or in any other manner during the period of either Jonnet Energy Corporation's or Jontex Energy, Inc.'s existence that you were doing business as an individual under the firm name and style of either corporation.

> *INTERROGATORY NO. 20.:* Have you at any time during Jonnet Energy Corporation's or Jontex Energy, Inc.'s existence ever signed any contracts, letters, or other papers in your individual capacity doing business as or on behalf of either of said corporations?

cases, we have looked to *Castleberry* for the appropriate definition of the doctrine under Texas law. *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458-59 (5th Cir.1992); *Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106, 1130-33 (5th Cir.1988). The Jonnets' deemed admissions are nearly identical to the *Castleberry* court's definition of alter ego. As a matter of law, the Jonnets have admitted to being the alter ego of Jonnet Energy. Consequently, no genuine issue of material fact exists.

The district court's summary judgment for Western was appropriate and is AFFIRMED.