John Burel WATKINS, Jr.

v.

**BLACK & DECKER (U.S.), INC.; American Hardware, Inc.; and Emhart Corporation.**

Civ. A. No. G–94–692.

United States District Court, S.D. Texas, Galveston Division.

April 21, 1995.

Russell G. Burwell, Burwell Enos & Baron, Texas City, TX, for plaintiff.

Frank G. Jones, Fulbright & Jaworski, Houston, TX, for defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons stated below, Defendants' Motion for Summary Judgment is DENIED.

### I. Background

Plaintiff brings this product liability action based on the theories of strict liability and negligence. On December 28, 1992, Plaintiff John Burel Watkins, Jr., was placing a J. Stevens Model 37 bolt-action .410 shotgun behind a dresser in his home. The gun slipped and fell approximately one or two inches, landed on its butt stock, and discharged, which resulted in the shotgun driv-

ing shot pellets through Plaintiff's right hand.

The shotgun was manufactured by J. Stevens Arms Company. This company was founded in 1864 and was incorporated in 1886. In 1936, J. Stevens merged into and was made a division of Savage Arms Corporation. On June 7, 1963, Savage Arms Corporation merged with American Hardware Corporation. As a result of this merger, Savage Arms became an unincorporated division of American Hardware Corporation.

On April 9, 1964, American Hardware Corporation merged with Emhart Manufacturing Company. The surviving corporation was named Emhart Corporation. The status of Savage Arms as an unincorporated division was unaffected by the merger.

In 1976 Emhart Corporation underwent internal corporate restructuring. Emhart Corporation changed its name to Emhart Industries, Inc. A new entity, Emhart Corporation, was created to function as a holding company. This new entity, Emhart Corporation, became the parent of Emhart Industries, Inc., holding all of the shares of Emhart Industries, Inc. The status of Savage Arms as an unincorporated division remained unaffected by this restructuring.

In July 1981, an agreement was reached under which a group headed by Robert J. Friedman was to purchase the Savage Arms Division of Emhart Industries, Inc. A Purchase and Sales Agreement dated July 21, 1981, completed the transaction whereby the Savage Arms Division of Emhart Industries, Inc. was sold to Robert J. Friedman. The Savage Arms Division subsequently became Savage Industries, Inc. Under the terms of the sales agreement, Savage Industries, Inc. purchased all of the assets of the Savage Arms Division and assumed responsibility for product liability claims relating to firearms previously manufactured by Emhart Industries, Inc. and its predecessors.

In March 1989, an agreement was reached pursuant to which a Black & Decker entity, B & D, Inc., acquired all of the stock of Emhart Corporation and merged into Emhart Corporation. The surviving corporation, Emhart Corporation, became a wholly owned subsidiary of Black & Decker, Inc. B & D, Inc. allegedly had no assets and was allegedly formed to avoid Black & Decker, Inc.'s assumption of Emhart Corporation's liability.

Plaintiff asserts causes of action against Black & Decker (U.S.), Inc., a wholly owned subsidiary of Black & Decker, Inc.; American Hardware, Inc.; and Emhart Corporation. Plaintiff asserts that the Defendants defectively designed, manufactured and/or marketed the shotgun which caused his injuries. Plaintiff further asserts that the Defendants were negligent in designing, manufacturing, and marketing the shotgun by failing to design, manufacture, and market the firearm so that users would be properly warned of the dangers associated with the firearm. Finally, Plaintiff alleges that at the time the shotgun was marketed, there were reasonably feasible and available designs and safety features, which if employed in the product would have greatly reduced or eliminated the risk of injury suffered by the Plaintiff.

Defendant filed this Motion for Summary Judgment, asserting that since Savage Industries, Inc. agreed to assume the general business debts of the Savage Arms Division and to succeed to the collective bargaining agreements and employee pension plans of the Savage Arms Division, none of the Defendants named in this lawsuit are proper parties. Rather, Defendants assert that the proper Defendant should be Savage Industries, Inc.

In response thereto, Plaintiff asserts that the sale of the Savage Arms Division did not relieve Emhart Industries, Inc. from the liability it incurred through its previous mergers because the sale failed to establish Savage Arms, Inc. as the sole entity liable for the liabilities resulting form the defective shotgun.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under

governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.* See also *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for summary Judgment, the court must accept the evidence of the non-moving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2514.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra*, 475 U.S. at 596–97, 106 S.Ct. at 1361 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

### III. Discussion

Defendants' central argument is that Black & Decker, Inc. and its subsidiaries are not liable for Plaintiff's damages because Emhart Industries, Inc. sold off the entire Savage Arms Division to Robert Friedman prior to the merger of Emhart Industries, Inc. and Black & Decker, Inc. In support of this argument, Defendants cite *Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) and *Western Resources Life Ins. Co. v. Gerhardt*, 553 S.W.2d 783 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). These cases stand for the proposition that a successor corporation is liable for the liabilities of the predecessor corporation where the successor expressly assumes such liabilities. Defendants assert that the sales agreement between Emhart Industries, Inc. and Robert Friedman, whereby Robert Friedman purchased the Savage Arms Division, contained such a clause in which Mr. Friedman's new company expressly assumed the liabilities of the Savage Arms Division. Defendants contend that as a result of this clause, Emhart Industries, Inc. and its successor corporation, Black & Decker, Inc., is absolved from all tort liability incurred heretofore by the Savage Arms Division. However, this Court is unpersuaded by Defendants' arguments for the following reasons.

While both *Mudgett* and *Western Resources* address the issue of whether a successor corporation may become liable for its predecessor's liabilities, those cases did not hold that the predecessor is completely absolved of any liabilities of its predecessors. Rather, these cases merely suggest ways in which the successor corporation may be held liable in conjunction with its predecessor.

A successor corporation can become liable for the liabilities, including product liabilities, if the successor corporation assumes the liabilities by an express or implied agreement, or by reason of the fact that the sale of the corporate assets amounted to a merger or consolidation, or that the transaction was a fraudulent endeavor by the original corporation to escape liability. *Western Resources Life Ins. Co.* at 786. It is undisputed that there was no merger between Emhart Industries, Inc. and the purchasing corporation owned by Robert Friedman. The Defendants argue that Emhart Indus-

tries, Inc. was relieved of tort liability because the purchaser expressly agreed to assume that liability.

■ Defendants' position is contrary to the policy upon which successor corporation liability is based. Successor corporation liability is designed to protect the injured Plaintiff, not the corporation. It is designed to furnish the Plaintiff with a remedy where the preceding corporation has merged or ceased to exist as a result of a sale of assets. In the present case, Emhart Industries, Inc. is attempting to avoid tort liability which it incurred through a series of mergers. Although Emhart Industries, Inc. decided to extricate itself from the gun manufacturing business, this business decision should not relieve it from liabilities it had formerly incurred through the normal course of business.

■ Furthermore, successor corporation liability has developed to insure that liability transfers when the predecessor corporation ceases to exist as a result of a merger. Emhart Industries, Inc. did not cease to exist following the sale of the Savage Arms Division. Rather protection of the injured Plaintiff is best served by holding Emhart Industries, Inc. responsible for the liabilities it previously incurred.

■ This Court next turns to the issue of whether Black & Decker, Inc. may be held liable for tort liability incurred by its wholly owned subsidiary, Emhart Industries, Inc. Defendants assert that Black & Decker Inc., Black & Decker (U.S.), Inc., and Emhart Corporation did not design, manufacture, sell, or distribute the firearm in question. According to Defendant, Emhart Industries, Inc. is the only Defendant that was ever engaged in the business of designing, manufacturing, selling, or distributing firearms. Defendants argue that because Black .& Decker, Inc., Black & Decker (U.S.), Inc., Emhart Corporation and Emhart Industries, Inc. are each separate legal entities, there is no basis for imposing liability upon Black & Decker, Inc., Black & Decker (U.S.), Inc., or Emhart Corporation for any alleged tort arising out of the design, manufacture, sale, or distribution of firearms by Emhart Industries, Inc. or its predecessors.

It is true that under Texas law a successor corporation is generally not liable for its predecessor's obligations when it acquires the predecessor solely by purchasing all or substantially all of the predecessor corporation's assets. Tex.Bus.Corp.Act Ann. art. 5.10(B)(2); *Glasscock v. Armstrong Cork Co., et al.,* 946 F.2d 1085, 1094 (5th Cir.1991). But, clearly Black & Decker, Inc. did more than merely purchase all or substantially all of the assets of Emhart Corporation. The Agreement and Plan of Merger dated March 19, 1989, between Emhart Corporation and the Black & Decker Corporation effectuated a merger between Emhart Corporation and Black & Decker Corporation. Defendant's Motion for Summary Judgment, Exhibit 6. Under Texas law, the surviving corporation of a merger assumes the liabilities of each of the merging corporations. Tex.Bus.Corp.Act Ann. art. 5.06(A)(3); *Glasscock v. Armstrong Cork ·Co., et al.,* 946 F.2d 1085, 1094 (5th Cir.1991). Although Emhart Corporation held all of the stock of Emhart Industries, Inc., Emhart Industries, Inc. was a wholly owned subsidiary and therefore maintained a separate legal identity from Black & Decker, Inc.

■ Generally, a parent corporation has a separate legal existence from its subsidiaries, and the parent and subsidiary corporations should be treated separately unless circumstances suggest that the distinction between corporate entities should be disregarded. *Matter of Chrome Plate, Inc.,* 614 F.2d 990, 996 (5th Cir.1980) *cert. denied, Chrome Plate, Inc. v. U.S.,* 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (1980); *Engel v. Telepromptor Corp.,* 703 F.2d 127, 134 (5th Cir.1983).

■ The Fifth Circuit has recognized that there are three broad categories in which a Court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for an illegal purpose; and (3) the corporation is used as· a sham to perpetrate a fraud. *W. Horizontal Drilling v. Jonnet Energy Corp.,* 11 F.3d 65, 67 (5th Cir.1994).

An alter ego exists where a corporation is operated and organized as a mere tool or business conduit of another corporation. *Id.* at 68. There are several factors which a Court may consider to determine if a corporation is merely the alter ego of another corporation. The Court may look at the total dealings of the corporation, such as the amount of financial interest, ownership, and control the parent has over the subsidiary. *Id.* When management or operations are controlled by the parent corporation, such constitutes evidence of an alter ego relationship. *Gentry v. Credit Plan Corporation of Houston,* 528 S.W.2d 571, 573 (Tex.1975).

The deposition testimony of Mr. Theodore Lutkus, attorney for Black & Decker Inc., Black & Decker (U.S.), Inc., Emhart Corporation, and Emhart Industries, Inc. indicates that Black & Decker, Inc. completely controls Emhart Industries, Inc. Mr. Lutkus is not only the legal counsel for all of the Black & Decker entities involved, but he is also an officer for several of the Black & Decker organizations. Deposition of Theodore Lutkus, at 4, 20–21, 37–40.

Additionally, according to Mr. Lutkus' deposition, all of the Defendants in this case share the same address for their headquarters. *Id.* at 6–8. This goes beyond all of the Defendants having offices in the same building. Mr. Lutkus testified that he believed that the headquarters building is owned by Black & Decker (U.S.), Inc., but was uncertain as to whether any of the other Defendants paid rent. *Id.* at 17. Furthermore, although the headquarters for Emhart Industries, Inc. and Emhart Corporation are located in this office building, there are no offices designated specifically for these companies within the building. *Id.* at 16–18. Additionally, the employees at the headquarters of Emhart Corporation and Emhart Industries, Inc. are all employees of Black & Decker. *Id.* at 53. The directors and officers of Emhart Industries, Inc. are all paid by Black & Decker. *Id.* at 41.

The Court notes that there is no ownership interest in Emhart Industries, Inc. that is not owned by Black & Decker, Inc. *Id.* at 80. Moreover, Emhart Corporation and Black & Decker, Inc. share common officers and directors. *Id.* at 9. In fact, the top official of Emhart Industries, Inc., Ray Devita, who directs the activities of Emhart Industries, Inc., is an executive Vice–President of the Black & Decker Corporation. *Id.* at 54–55.

The Court further observes that Black & Decker Inc. controls almost every aspect of Emhart Industries, Inc. *Id.* at 36. For example, Black & Decker provides all of the insurance and workers' compensation coverage for Emhart Industries, Inc. *Id.* Black & Decker, Inc. sets the policy that governs the business operations of Emhart Industries, Inc. *Id.* at 18–20. The Court finds that Black & Decker, Inc., Black & Decker (U.S.), Inc., Emhart Corporation, and Emhart Industries, Inc. have ceased to be separate legal entities and are therefore all subject to each other's liabilities.

The central purpose underlying the imposition of successor corporate liability is to protect the Plaintiff's right to seek redress for any tort liability that may have been engendered by the predecessor corporation which is no longer in existence. The corporation that originally manufactured the gun that injured Plaintiff was J. Stevens, Inc. That corporation, through a series of mergers, was ultimately merged into Emhart Industries, Inc. In an effort to end its involvement in the gun manufacturing business, Emhart Industries, Inc. sold the unincorporated division called the Savage Arms Division. This Court does not wish to speculate as to the motives of Emhart Industries, Inc. to sell the Savage Arms Division.

The Court notes, however, that to permit corporations to escape liability simply by selling off a division within its corporation that is particularly susceptible to liability would utterly frustrate the underlying purpose of successor corporate liability. The temptation to compartmentalize potentially troublesome activities or product lines within a large corporation and to sell them when litigation is pending would be hard to resist. The sole recourse available to plaintiffs following such a "sale" would be to pursue the legal entities with carefully crafted shallow pockets. The sale would serve to shield the vast financial resources of the corporation from liability.

 

Thus, this Court concludes that corporations may not escape tort liability by merely selling off divisions within the corporation.

Under Fed.R.Civ.P. 56(c), the Defendants have satisfied their initial burden of informing the Court of the basis for their motion and identifying those relevant portions of the record which they believe demonstrate the absence of a genuine issue of material fact. After Defendants have met their initial burden, the burden shifted to the Plaintiff to establish the existence of a genuine issue for trial. Plaintiff must come forward with "specific facts showing that there is a genuine issue for trial." This Court finds that the record taken as a whole could lead a rational trier of fact to find for the Plaintiff. Thus, this Court finds that a genuine issue of material fact exists and therefore, Defendants are not entitled to judgment as a matter of law.

For the reasons stated above, Defendants' Motion for Summary Judgment is **HEREBY DENIED.** Furthermore, the parties are **ORDERED** to file nothing further on this issue in this Court, especially Motions to Reconsider or the like, *unless* they can present *compelling* and *relevant* new evidence or legal authority which they could not, through the exercise of due diligence, have presented upon original submission of this Motion. *Any and all* further relief on this issue shall be sought in due course from the United States Court of Appeals for the Fifth Circuit. The parties shall each bear their own costs incurred herein to date.

**IT IS SO ORDERED.**