# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2012

No. 11-40557
Summary Calendar

Lyle W. Cayce
Clerk

ABRAHAM FLORES,

Plaintiff-Appellee

v.

LORANCE W. BODDEN,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:07-cv-00088

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Lorance Bodden appeals the district court's judgment in favor of Plaintiff-Appellee Abraham Flores. Flores had previously secured a judgment against RJMW Corporation, a corporation owned and managed by Bodden, based on an accident that occurred on a shrimping trawler owned by RJMW. Following RJMW's bankruptcy, Flores filed the instant suit against Bodden, claiming under Texas law that Bodden was RJMW's alter ego and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40557

should be liable for the judgment against RJMW. Following a bench trial, the district court entered judgment for Flores. Bodden now appeals that judgment on a range of evidentiary and substantive grounds. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellee Abraham Flores ("Flores") was employed by RJMW Corporation ("RJMW") aboard a shrimping trawler owned by RJMW. RJMW was itself owned by Defendant-Appellant Lorance W. Bodden ("Bodden"). Following an on-the-job injury abroad the trawler, Flores sued RJMW in district court under the Jones Act, 46 U.S.C. § 688. Bodden, in his capacity as the owner of RJMW, avoided service for some time, but Flores eventually did manage to serve RJMW. However, RJMW failed to answer Flores's complaint and so the district court entered a default judgment in favor of Flores.

RJMW subsequently filed several post-default motions. The district court set aside the damages portion of the default judgment but left intact the finding that RJMW was liable, and scheduled a hearing to determine damages. At the damages hearing, the court awarded Flores $ 123,622.00 plus interest. However, before a final judgment could be entered, RJMW filed for bankruptcy. Flores's case against RJMW was administratively closed for a period of time pending the resolution of the bankruptcy proceeding. Eventually, though, the case was re-opened and Flores filed a motion for a default judgment. The motion was granted and the district court entered a final judgment, ultimately agreed to by RJMW's trustee, in the amount of $ 123,622.00 plus interest in favor of Flores.

No. 11-40557

While RJMW's bankruptcy proceedings were ongoing, Flores filed the present action under 28 U.S.C. § 1333[1] against Bodden in his personal capacity, arguing that as the alter ego of RJMW, Bodden should be held liable for Flores's on-the-job injuries. Bodden once again failed to answer and Flores secured a default judgment against him in the amount of $ 123,622.00. Flores made substantial efforts to collect on his judgment, but before Flores secured any payment, Bodden filed an emergency motion to vacate the default judgment, which the district court granted. Following the setting-aside of the default judgment against Bodden, the case proceeded through discovery.

The parties presented their cases in a paper bench trial. The district court concluded that Bodden exercised complete control over RJMW so that he was the corporation's alter ego and liable for Flores's injuries. The court then entered a final judgment in favor of Flores in the amount of $ 123,622.00 plus interest. Bodden now appeals the district court's judgment on several grounds.

## II. DISCUSSION

*1. Admission of Exhibits*

Bodden first appeals the district court's decision to allow into evidence several exhibits, consisting of some of Flores's medical and income records, under Federal Rule of Evidence 807. "We review a district court's evidentiary rulings for abuse of discretion." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 355 (5th Cir. 2010). "The district court is given wide latitude in admitting evidence under [Rule 807], and we 'will not disturb the district court's application of the exception absent a definite and firm conviction that the court made a clear error

---

[1] The district court later concluded that subject matter jurisdiction was instead established by diversity jurisdiction. *See* 28 U.S.C. § 1332.

No. 11-40557

of judgment in the conclusion it reached based upon a weighing of the relevant factors.'" *United States v. El–Mezain*, 664 F.3d 467, 497–98 (5th Cir. 2011) (quoting *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (citation and internal quotation marks omitted)). We need not address whether there was any error in admitting the medical and income records, because any error would have been harmless. All that was required here to establish RJMW's liability was a certified copy of the default judgment, which was entered into the record without objection.[2]

*2. Admission of Deposition Testimony*

Bodden next appeals the district court's decision to admit into evidence the depositions of two witnesses taken in connection with the initial RJMW litigation. "We review a district court's decision to admit or exclude evidence for abuse of discretion." *MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011) (citation omitted). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003). "If we find an abuse of discretion in admitting or excluding evidence, we next review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). We consider each contested deposition in turn.

---

[2] Bodden also objects to the admission of two additional exhibits consisting of some corporate records and a report from the Coast Guard's website. At trial, Bodden withdrew his objections to these pieces of evidence once their significance was explained. Bodden's decision at trial to withdraw his objections to these exhibits, and effectively consent to their admission, terminates his claims on appeal. *See* FED. R. EVID. 103(a).

No. 11-40557

*A. Flores's Deposition*

The district court permitted the introduction of previous, transcribed deposition testimony from Flores. Flores—a Mexican national who was in the United States illegally when he was injured aboard the trawler—was living in Mexico during the time of the instant trial following his deportation from the United States. The deposition was taken roughly four years prior to the trial as part of Flores's initial suit against RJMW. The deposition was apparently introduced to explain how Flores was injured and the nature of his injuries. Given that the sole issue before the district court was whether Bodden was the alter ego of RJMW, we remain unclear as to why it was necessary to introduce Flores's deposition into evidence, but we proceed anyway.

In admitting the deposition, the court relied on the magistrate judge's report and recommendation, which concluded that "Flores claims to be unavailable and the Court believes he is." The magistrate judge reasoned that because Flores had been deported from the United States, his reentry into the United States to testify could result in his prosecution for illegal reentry. The magistrate judge saw no basis for a temporary parole that would allow Flores to reenter and testify. The magistrate judge also found that while Flores had been deposed in connection with his claim against RJMW, this was "exactly the same claim" as against Bodden such that both Bodden and RJMW would have had identical incentives to develop Flores's testimony, notwithstanding a change in counsel. The magistrate judge also distinguished *Garcia–Martinez v. City and County of Denver*, 392 F.3d 1187 (10th Cir. 2004), a case offered by Bodden against allowing the deposition into evidence, as "too harsh" of a decision to apply in the present case, especially given Bodden's "outrageous behavior"

5

throughout the litigation. The magistrate judge allowed Bodden the opportunity to take Flores's deposition by telephone, but Bodden apparently declined to do so.

Bodden argues on appeal that Flores failed to show that he was unavailable to testify, as required by Federal Rule of Evidence 804(a)(5) and Federal Rule of Civil Procedure 32(a)(4)(B) and (E). He also argues that the district court erred in concluding that RJMW had a similar motive to Bodden when developing Flores's testimony. Finally, he asserts that *Garcia–Martinez* should control our decision, given its holding that a district court did not abuse its discretion in excluding deposition testimony from a similarly unavailable witness.

We reject all of Bodden's arguments. First, Flores complied with all the relevant formalities entailed by the applicable Federal Rules. Moreover, we see no abuse of discretion in the district court's, and magistrate judge's, determination that Flores's situation was exceptional, involving multiple deportations from the United States and a serious risk of incarceration were he to return. The court, on the basis of the evidence presented, could have easily concluded that Flores was outside of the United States. *See* FED. R. CIV. P. 32(a)(4)(B). Given these challenging circumstances, the magistrate judge endeavored to accommodate Bodden by allowing a telephonic deposition, an accommodation that Bodden declined.

Second, we are unpersuaded by Bodden's contention that RJMW's counsel faced different incentives in developing Flores's testimony from his own. To make this argument, Bodden observes that Flores's deposition also covered the issue of contributory negligence, a relevant issue in his case against RJMW that

No. 11-40557

was not disputed in the Bodden case, as opposed to solely the question of liability. "[S]imilar motive does not mean identical motive," and "the similar-motive inquiry appropriately reflects narrow concerns of ensuring the reliability of evidence admitted at trial." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000). Bodden does not actually assert that liability was left unexamined in Flores's deposition or even clearly explain how RJMW's counsel, as opposed to his own, would have differed in developing Flores's testimony on that issue. Flores apparently utilized his deposition to establish the underlying facts motivating his alter ego claim against Bodden. As such, the deposition served a virtually identical purpose in both litigations. *See United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998).

Finally, *Garcia–Martinez* does not affect our conclusion. In that case, the district court, in excluding the deposition testimony of a similarly unavailable party, noted that it "ha[d] not been presented with any authority for the proposition that there is actually no way for [the plaintiff] to obtain a temporary visa in order to come into this country for purposes of attending this hearing." *Garcia–Martinez*, 392 F.3d at 1190–91. Here, in contrast, the magistrate judge specifically considered whether Flores might be able to obtain a temporary parole to enter the United States and concluded that he could not. Furthermore, the conclusion in *Garcia–Martinez* that the district court *did not* abuse its discretion in *excluding* deposition testimony does not entail a conclusion in the instant case that the district court in this case *did* abuse its discretion in *admitting* deposition testimony.

We conclude that the district court did not abuse its discretion in admitting Flores's deposition testimony.

No. 11-40557

*B. Colley's Deposition*

Bodden also appeals the district court's decision to admit into evidence the transcribed deposition of Margaret Colley ("Colley"), an employee of Bodden who handled payments to the crew of the trawler. This deposition, like Flores's, was taken roughly four years earlier, during Flores's initial suit against RJMW. Colley's deposition focused on the finances and payment practices of the shrimping operation. In its Memorandum and Order, the district court did not make clear its ground for admitting Colley's deposition testimony. However, it appears to us, as well as both parties, that in rejecting the objections that Bodden lodged before it, the district court concluded that Colley was unavailable pursuant to Federal Rule of Civil Procedure 32(a)(4)(B) because in her deposition Colley explained that she lived in Port Lavaca, Texas, which is more than 100 miles from the courthouse. Bodden now argues that the district court erred in admitting Colley's testimony because Flores failed to show that Colley was not present within 100 miles of the courthouse at the time of his trial, as opposed to the time of the deposition.

Bodden's point is at least arguable. But we need not decide whether he is correct. Any error in admitting Colley's deposition would have to be evaluated under the harmless error doctrine, specifically to determine whether Bodden's substantial rights were affected. *See Bocanegra,* 320 F.3d at 584. If the remainder of evidence, excluding Colley's deposition, was sufficient to prove Flores's alter ego claim, then any abuse of discretion by the district court would have been harmless. As we explain in the next section, the evidence before the district court, excluding Colley's deposition, was sufficient to support its

No. 11-40557

conclusion that Bodden was RJMW's alter ego. Accordingly, if error, the introduction of her deposition into evidence was harmless.

*3. Alter Ego Standard and Evidence*

Bodden next appeals the legal standard that the district court applied to his alter ego claim, as well as the court's conclusion that the evidence was sufficient to support Flores's claim. "When a district court's final judgment following a bench trial is appealed, we review the district court's findings of fact for clear error, and conclusions of law and mixed questions of law and fact de novo." *See French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). The presence of an alter ego relationship is a question of fact. *See Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex. 1986). "Under the clearly erroneous standard, we will reverse only if we have a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000); *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009) ("A finding is clearly erroneous if it is without substantial evidence to support it [or] the court misinterpreted the effect of the evidence . . . .") (citation and internal quotation marks omitted).

Bodden first argues that the district court misstated Texas's law regarding alter ego. Bodden's argument appears to be that the district court should have concluded that Flores was required to "show that Mr. Bodden exercised complete control over the day to day operation of the boat in question **and** 'that control was used to commit a fraud or wrong' that caused APPELLEE FLORES to be injured." *Appellant's Br.* at 38 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411 (5th Cir. 2006)).

9

No. 11-40557

In fact, the district court properly explained that, under Texas law, there are six situations in which a court may disregard the corporate form:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Castleberry*, 721 S.W.2d at 272 (footnotes omitted). It is the second situation—alter ego—that is at issue here. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) ("Each example [of the six listed above] involve[s] an element of abuse of the corporate structure, including example (2), alter ego.").

"Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry*, 721 S.W.2d at 272. The alter ego inquiry is meant to be flexible and fact-specific, *id.*, and an "alter ego relationship may be shown from the *total* dealings of the corporation and the individual." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (emphasis in original). "This showing may include evidence of the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the

corporation has been used for personal purposes." *Id.* (citation and internal quotation marks omitted).[3] Texas "'[c]ourts have generally been less reluctant to disregard the corporate entity in tort cases than in breach of contract cases.'" *Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App.—Houston [1st Dist.] 2009) (quoting *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984)). The district court properly explained all of these components of the alter ego inquiry. It is Bodden who has focused on the wrong legal standard.[4] We see no error in the district court's understanding of Texas's alter ego law.

We must then consider whether the district court properly applied this law to the facts before it. In assessing the district court's determination, we consider the evidence offered by Flores other than Colley's deposition. As we stated above, Flores produced a certified copy of the default judgment and so, in assessing this

---

[3] Bodden attempts to suggest that these factors, as originally laid out in *Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex. 1986), have been superseded by a statute making it more difficult to hold a shareholder liable under an alter ego theory for failing to observe corporate formalities. *See* TEX. BUS. ORGS. CODE § 21.223(a)(3). But as we have observed, "[t]he amendments overruled *Castleberry* to the extent that a failure to observe corporate formalities is no longer a factor in proving the alter ego theory *in contract claims*. . . . Thus, to pierce the corporate veil using the alter ego theory *in a contract claim*, the claimant must look to the remaining factors outlined in *Castleberry*." *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 (5th Cir. 1994) (emphases added) (citations omitted). Texas courts have embraced this same view. *See, e.g.*, *Wilson v. Davis*, 305 S.W.3d 57, 68 n.5 (Tex. App.—Houston [1st Dist.] 2009). As Flores's claim against Bodden is a tort claim, the amendments he cites do not control.

[4] Bodden cites to *Bridas* for the legal standard he quotes. *See Bridas*, 447 F.3d at 416. That case was part of an ongoing dispute and quoted from an earlier Fifth Circuit decision in the dispute. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) (previous decision). That earlier decision drew its formulation of the alter ego standard from a Second Circuit decision reciting New York's alter ego law. *See id.* (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, Inc., 122 F.3d 130, 134 (2d Cir. 1997)). In this case, no one disputes that Texas law governs. Accordingly, *Bridas* and its legal standard are not on point.

remaining evidence, the district court had only to determine whether Bodden acted as RJMW's alter ego.

Flores relied on several pieces of evidence to make his case: Flores's deposition; the deposition of John Partridge ("Partridge"), an attorney who represented RJMW; the deposition of Bodden himself; and various corporate, tax, and other documents concerning RJMW. Flores's deposition was apparently introduced to describe the details of his accident and subsequent injuries. As such, it does not provide compelling evidence that Bodden acted as RJMW's alter ego. The other evidence is more probative, however.

Partridge testified that he had been retained to represent RJMW and another of Bodden's businesses, the Bodden Shrimp Company ("BSC"), in ongoing litigation. Partridge explained that he did not represent Bodden personally in the litigation, only the corporation, but that it was Bodden's son who had procured his firm's engagement with both companies and made payments to the firm on their behalf. During Flores's litigation against RJMW, Partridge filed a suggestion of bankruptcy when it appeared that a settlement would not be reached between the parties. Partridge stated that the trawler owned by RJMW was not worth the legal fees that would have been incurred in defending Flores's claim. Partridge also testified that Bodden told him that he was planning on taking out a mortgage on his house to finance these legal costs. Partridge advised him not to do so and instead suggested that the corporations file for bankruptcy, which they eventually did. Partridge's testimony reveals that RJMW was severely undercapitalized relative to the risks it faced. In the alter ego analysis, "[t]he financial strength or weakness of [a corporation] is . . . an important consideration in determining whether the [corporation] is merely a

shell through which the [alleged alter ego] is conducting its business without taking any of the risks for liabilities incurred." *Lucas*, 696 S.W.2d at 375; *O'Berry v. McDermott, Inc.*, 712 S.W.2d 206, 207–08 (Tex. App.—Houston [14th Dist.] 1986) ("If the corporation sued is not reasonably capitalized in light of the nature and risk of its business, the need might arise to attempt to pierce the corporate veil and hold the parent corporation liable.").

Bodden's own testimony further supplements Partridge's account. At his deposition, Bodden confirmed that he was the owner of RJMW, that he served as the president and as a director, and that his wife served as vice president and as the sole other living director. Of course, it is insufficient that the corporation and its alleged alter ego are "closely tied through stock ownership, shared officers, financing arrangements, and the like." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999); *see also PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007). Instead, "the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002). In this regard, Bodden admitted that he made "all of the major business decisions for RJMW," including whether the trawler would fish or not, who would captain the vessel, and whether repairs would be made. He mentioned no other individuals who made any significant decisions regarding the corporation, the trawler, or how RJMW's operations would be conducted.

Bodden's deposition also revealed that the finances of RJMW were suspect. Bodden stated that the trawler had no insurance to cover damages to the trawler

No. 11-40557

or to pay for injuries to crew members.[5] Bodden also admitted that he had previously been sued "probably six times." The deposition further revealed that the proceeds from the trawler's shrimping would actually be placed into an IBC Bank account under the name of W&G Trawlers, a defunct corporation owned by Bodden that had no involvement with the trawler's activities. This bank account was used in turn to cover expenses associated with the trawler's operations. Bodden's testimony, then, reveals not only that RJMW was undercapitalized relative to the risks it faced, *Lucas*, 696 S.W.2d at 375, but also the commingling of corporate funds with other sources of income. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 347 (Tex. App.—Dallas 2005) ("The types of evidence a court will consider as proof of an alter ego include: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure[s] to keep corporate and personal assets separate.").

Moreover, there was substantial evidence that RJMW's corporate structure was organized deceptively. *See SSP Partners*, 275 S.W.3d at 454 (explaining that alter ego involves "an element of abuse of the corporate structure"). Bodden himself recognized that the documentation for RJMW was often incorrect. For example, Bodden admitted that while the shrimping trawler was owned by RJMW, it was Colley's address, not RJMW's or Bodden's, that was given to the Coast Guard as the owner's address for the boat. The documentary

---

[5] Apparently, Bodden had secured insurance on the trawler at some point in the past, but it was "canceled out" and Bodden never renewed it.

14

evidence before the district court revealed still further discrepancies. For example, Martin Tower, a former business partner who Bodden bought out and who had died about ten or twelve years prior to Bodden's deposition, was listed as the registered agent for RJMW on recent franchise tax forms. Misrepresentations and inaccuracies of this kind, coupled with Bodden's attempts to evade service of process, point to the abuses of the corporate form that the alter ego theory was meant to address.

Even excluding Colley's deposition, we lack any "definite and firm conviction that a mistake has been committed" by the district court and see no clear error in its factual findings. *Canal Barge Co.*, 220 F.3d at 375. As the Texas Supreme Court has explained, the touchstone of the alter ego analysis is whether "holding only the corporation liable would result in injustice." *Castleberry*, 721 S.W.2d at 272; *see also SSP Partners*, 275 S.W.3d at 454 ("We disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."). Our review of the evidence persuades us that Bodden used RJMW to unfairly and inequitably shield himself from the risks he knew would arising in running an undercapitalized shrimping business. The remaining evidence was sufficient to support a finding that Bodden was the alter ego of RJMW. We, therefore, reject Bodden's appeal on this point.

*4. Claim Preclusion*

Finally, Bodden contends that district court erred in imposing liability on him on account of the judgment against RJMW. Bodden appears to argue that because neither he nor his current counsel participated in the proceedings

against RJMW, the *res judicata* requirement of identical parties is not met. For *res judicata* to bar the relitigation of a claim, four requirements must be met: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (footnote omitted). Bodden contests only the first requirement, but his argument is unpersuasive. The entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation. Courts of appeals have routinely declined to accept arguments like Bodden's. *See, e.g., Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (holding that an adverse party's own allegations of a controlling, "near alter ego" relationship between parent and subsidiary were sufficient to establish privity between the two corporations for the purposes of claim preclusion); *cf. Torrain v. AT&T Mgmt. Servs., LP*, 353 F. App'x 37, 38 (7th Cir. 2009). Accordingly, we reject Bodden's argument.

## III. CONCLUSION

For all of the foregoing reasons, we AFFIRM the district court's judgment in favor of Flores.