**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Valentin EUFRACIO–TORRES,**
**Defendant–Appellant.**

**No. 88–2012.**

United States Court of Appeals,
Tenth Circuit.

Nov. 22, 1989.

Robert S. Streepy, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty. for D. Kan., with him on the brief), Kansas City, Kan., for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender (Charles D. Anderson, Federal

Public Defender, with him on the brief), Kansas City, Kan., for defendant-appellant.

Before McKAY and BRORBY, Circuit Judges, and BOHANON,* District Judge.

BRORBY, Circuit Judge.

Valentin Eufracio–Torres (Torres) appeals the Judgment entered on his convictions of two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). On appeal he argues the trial court erred in allowing the introduction of the following evidence at trial: (1) deposition testimony of material witnesses, and (2) Torres' prior convictions for illegal entry into the United States. We affirm.

## FACTS

On January 23, 1988, special agents of the Department of Justice, Immigration and Naturalization Service (INS), arrested Torres for transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(B). At the time of his arrest, Torres was driving a pickup truck with two passengers in the cab and seven Mexican citizens in the camper unit of the truck. The seven passengers in the camper produced "Texas Identification" cards and "Social Security" cards, all of which indicated that they were not issued by a government entity. Suspecting that the seven were illegal aliens, the police contacted INS agents, who in turn arrested Torres and the two passengers in the cab. The seven passengers were detained pending deportation to Mexico.[1]

Torres was charged with two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). The government filed a motion requesting the seven passengers be declared material witnesses pursuant to 18 U.S.C. § 3144.[2] The government

---

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

1. The record indicates that the witnesses signed waivers of deportation and consented to their removal to Mexico.

2. 18 U.S.C. § 3144 provides:

If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this

also filed a motion for detention of the seven material witnesses pursuant to 18 U.S.C. § 3142.[3] The court set a pretrial detention hearing pursuant to 18 U.S.C. § 3142 in order to determine whether the seven witnesses should be detained. Torres contested the government's motion, claiming there was insufficient evidence that the seven illegal aliens would fail to appear at trial. He requested they be released for deportation to Mexico. After a detention hearing on February 3, 1988, the magistrate ordered that the seven material witnesses be detained pursuant to 18 U.S.C. § 3142.

On February 5, 1988, the government moved to depose the material witnesses. The court held a hearing on this motion on February 22, 1988. Torres opposed the motion to depose the witnesses, claiming that the government had failed to demonstrate "exceptional circumstances" warranting depositions because the government failed to show that the witnesses would not appear at trial if released unconditionally. Appellee's Brief at 4. Further, he argued that use of the depositions at trial would violate his constitutional right to confront the witnesses against him. The magistrate granted the government's motion, and the witnesses were deposed on or before February 29, 1988.

On February 24, 1988, Torres filed a motion to detain the witnesses pending trial of this action. The court denied the motion following a hearing on March 3, 1988. The depositions were transcribed, read and interpreted in Spanish to the witnesses, and subscribed by the witnesses on March 8, 1988. The magistrate then ordered the release of the material witnesses to INS under administrative detainers.

Before the court delivered the witnesses to the custody of INS, they were served with subpoenas to appear for trial and given instructions regarding reentry into the United States, travel reimbursement, and appearance fees in connection with the trial. Each witness indicated that he would return to testify at trial, which was set to begin on March 30, 1988. Appellant's Brief at 6–7.

One day before trial was set to begin, the government filed a Notice of Intention to Use Depositions. Torres filed a motion opposing the same. Prior to trial proceedings on March 30, 1988, the court heard argument concerning the government's request to use the depositions at trial due to the unavailability of the witnesses. After an evidentiary hearing, the court found the witnesses were unavailable and that the government had used reasonable efforts in good faith to obtain their attendance. The court entered an order permitting the government to use the depositions at trial.

Also prior to trial, Torres filed a Motion in Limine asking the court to prohibit the government from using two 1982 convictions for illegal entry into the United States in violation of 8 U.S.C. § 1325. During trial, the court allowed the government to use the convictions and instructed the jury the evidence was admitted for the limited purpose to show Torres had knowledge that his passengers were illegal aliens at the time he transported them.

*Deposition Testimony*

Torres argues the trial court erred in admitting into evidence the deposition testimony of two alien material witnesses. He claims the court admitted the evidence in violation of his constitutional right to confront his accusers at trial. We are not persuaded by his argument.

■ Fed.R.Crim.P. 15(e), governing the use of deposition testimony at trial, provides in pertinent part:

title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

3. 18 U.S.C. § 3142 provides authority and procedures for release or detention of a defendant pending trial. The procedures also apply to persons declared material witnesses under 18 U.S.C. § 3144.

At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence....

Fed.R.Evid. 804(a) provides:

"Unavailability as a witness" includes situations in which the declarant—

....

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other *reasonable means.*

A declarant is not unavailable as a witness if ... absence is due to the procurement or wrong-doing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

(Emphasis added.) Further, the Supreme Court has interpreted the Confrontation Clause of the Sixth Amendment to require a "good faith" effort by the prosecution to obtain the declarant's presence at trial. *Barber v. Page,* 390 U.S. 719, 723–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968). Consequently, before using deposition testimony in a criminal case, the government must demonstrate that it made a good faith effort using reasonable means to obtain the declarant's presence at trial.

Torres argues the government failed to demonstrate either "good faith" or "reasonable means" in attempting to secure the presence of the witnesses at trial. Appellant's Brief at 12. He argues the government should have sought to secure housing and maintenance in a facility other than the local jail, and prohibited the witnesses from leaving the United States and knew that INS would immediately proceed with their deportation. Appellant's Brief at 12.

■ When seeking to use evidence of a witness who is unavailable for trial under Fed.R.Evid. 804, the proponent of the evidence bears the burden of demonstrating the unavailability of a declarant. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Martinez v. Sullivan,* 881 F.2d 921, 924 (10th Cir. 1989). After reviewing the record herein, we are not persuaded the trial court erred in permitting the deposition testimony to be considered by the jury.

■ The trial court correctly defined the issue [4] presented in this case:

The instant action involves a clash between the defendant's sixth amendment rights to confrontation and the witnesses' fifth amendment rights to due process. In determining whether the government's efforts were reasonable and the witnesses were unavailable, the court must remain mindful of these competing interests and minimize the decision's adverse constitutional impact.

Order of June 13, 1988. The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." In *Roberts,* the Supreme Court stated:

The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by [the provision] is the right of cross-examination." In short, the Clause envisions "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

448 U.S. at 63–64, 100 S.Ct. at 2537–38 (footnote and citations omitted). Some circumstances, however, justify dispensing with confrontation at trial. When competing interests are involved, evidence may be

4. We are persuaded by Judge O'Connor's reasoning set forth in the Memorandum and Order of June 13, 1988, and borrow heavily from his discussion of the law set forth in his Memorandum and Order.

offered without confrontation if the declarant is unavailable and the evidence is "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Id.* at 65, 100 S.Ct. at 2539 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)).

■ The competing interests to be weighed against those of the accused are the witnesses' procedural due process rights. The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const.Amend. V. Aliens, even those who are in this country illegally, are "persons" guaranteed Fifth Amendment due process. *Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 2391, 72 L.Ed.2d 786 (1982); *see also In re Class Action Application for Habeas Corpus,* 612 F.Supp. 940, 944–45 (W.D.Tex.1985) (providing a detailed summary of the Fifth Amendment rights of illegal aliens who are material witnesses).

■ The fundamental requirement of due process is an opportunity to be heard. *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646–47, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

■ Given the above considerations, the trial court found that the government's decision to move for release of the witnesses following the depositions was reasonable, and the witnesses were unavailable under Fed.R.Evid. 804(a)(5). The court wrote:

The government need not ride roughshod over the constitutional rights of seven persons in order to insure that the defendant's confrontation rights are not infringed upon under the circumstances present. Rather, the interests of the defendant must be balanced against those of the witnesses. On the one hand, the witnesses have a strong constitutional interest in not being detained when charged with no crimes. Significantly, the defendant, who was charged with a crime, was released on bond, whereas the witnesses, who were not charged—a circumstance not atypical of illegal transportation of aliens cases—were detained for more than six weeks. On the other hand, the defendant has an interest in confrontation at trial. Although the deposition testimony did infringe on this interest, the depositions were trustworthy and allowed the defendant to challenge the witnesses' statements. The witnesses were told that they could be criminally charged if they lied. The defendant, through counsel, was afforded the opportunity to cross-examine the witnesses during the depositions. Further, the depositions were postponed until the defendant could travel to Kansas City to be present. In short, the balance tips toward the fifth amendment interests of the witnesses, and the government was reasonable in moving to depose and release the witnesses.

Memorandum and Order. We agree fully with the trial court, and further observe that confining witnesses to give the jury the opportunity to personally hear them testify in Spanish and observe them as they testify would be unreasonable.

The law permits the use of a deposition if a witness is absent and the government has been unable to procure the witness' attendance by process or other reasonable means. Process was served and this failed to secure attendance. The witnesses were requested to return and instructed how to return and how to obtain the necessary monies to return. They promised to return, but failed to do so. The law does not require the government to utilize an absolute means of attempting to assure the appearance of a witness, only a reasonable means. The facts of this case establish the government utilized reasonable means to assure the attendance of the witnesses. The fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith.

Further, we agree with the trial court that *United States v. Mann*, 590 F.2d 361 (1st Cir.1978), relied upon heavily by Torres, does not control the outcome of this case. Torres cites *Mann* for the proposition that before the government is entitled to a finding by the trial court that witnesses are unavailable, it must demonstrate that it tried to secure the presence of the witnesses by means other than subpoena. While the *Mann* court stated: "The language of Rule 804(a)(5) suggests that 'other reasonable means' besides subpoenas must be tried before a witness can be found unavailable", *id.* at 367, the government in this case, contrary to the government in the *Mann* case, sought to obtain the presence of the witnesses by means other than subpoena. What the government did not do, and what Torres urges should be a precondition to the finding of unavailability, is ask the trial court to impose executive restraints on the witnesses to keep them in this country to testify before being deported by INS. "In the absence of any evidence from the Government as to inquiries concerning attempts to restrict the witnesses' movement within the jurisdiction of the court, the Government has not shown sufficient 'good faith' or reasonable measure to ensure the presence of the witnesses at trial." Appellant's Brief at 22. In our view, *Mann* does not dictate such a rule.

The trial court correctly distinguished *Mann* from the instant case. In *Mann*, the First Circuit held the trial court erred in allowing the government to take the deposition of the chief prosecution witness, an Australian juvenile, and the trial court committed reversible error in admitting the deposition at trial. The basis of the reversal was the government's failure to demonstrate the witness was unavailable. In *Mann*, however, the witness was not served with a subpoena, nor was she given specific instructions regarding whom to contact concerning her return to testify. The government merely "offered the opportunity" to the witness to return to testify. 590 F.2d at 363. Additionally, the court in *Mann* expressed concern that the government and the district court were attempting to remedy an earlier mistake of placing the witness in an adult detention center: "It was improper to require the defendant to bear the brunt of the government's attempt to remedy for the witness the effects of the government's earlier mistake." *Id.* at 366. We agree with the trial court that these factual differences distinguish *Mann* from the instant action. Also, the court in *Mann* held that the defendant's right to confrontation was paramount.[5]

In our view, the trial court herein did not err in weighing the rights of the witnesses and the accused and in concluding that the government should be allowed to take and use the depositions of the material witnesses. We view the government's actions in this case as complying with "reasonable means" and the "good faith" requirements of law, and agree with the trial court that "although alternatives were available, the government did not act unreasonably by releasing the defendants, given the government's instructions to the witnesses and the witnesses' assurance that they would return to testify." Memorandum and Order. We hold the trial court properly admitted into evidence the deposition testimony of the material witnesses.

## PRIOR CONVICTION

On the eve of trial, Torres filed a motion in limine seeking to exclude any testimony or other evidence regarding his two convictions in 1982 for illegal entry into the United States in violation of 8 U.S.C. § 1325. The trial court reserved ruling on the mo-

---

**5.** Torres also relies upon *United States v. Rothbart*, 653 F.2d 462 (10th Cir.1981), for the assertion that the witnesses were not unavailable because the government did not act reasonably to procure their attendance. In *Rothbart*, we held that the deposition of a material witness should not have been taken and that the witness was not unavailable. In *Rothbart*, however, we found "the government ... not only failed to make a good-faith effort to obtain [a witness'] presence at trial, but cleared existing obstacles to his journey outside the jurisdiction of the court by taking his deposition and releasing him from subpoena." *Id.* at 466. The distinction between *Rothbart* and the instant case is readily apparent.

tion until the conclusion of the government's case-in chief. At that time the court denied Torres' motion. The government introduced and the court admitted the evidence pursuant to Fed.R.Evid. 404(b) for the limited purpose of showing Torres' knowledge of the alien's illegal presence. Following the testimony regarding the 1982 convictions, the trial court instructed the jury that the evidence was admissible for a "very, very limited purpose" on the issue of Torres' knowledge that the persons he was charged with transporting were illegal aliens. The court repeated the cautionary instruction in the written instructions to the jury.[6]

Torres asserts the court erred in admitting the evidence. Citing *United States v. Temple*, 862 F.2d 821 (10th Cir.1988), he argues the evidence was improperly admitted because the evidence (1) does not tend to establish Torres' knowledge of the passenger's illegal status; (2) is not so related to the charges in the Indictment that it serves to establish knowledge; (3) does not have real probative value rather than just possible worth; and (4) was not close in time to the crimes charged. Appellant's Brief at 37–38. We review the trial court's admission or exclusion of evidence under the abuse of discretion standard of review, *United States v. Garot*, 801 F.2d 1241, 1247 (10th Cir.1986), and conclude the trial court did not abuse its discretion in admitting the evidence.

■ Fed.R.Evid. 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court reasoned the evidence was admissible because Torres was charged with specific intent crimes. Because under 8 U.S.C. § 1324(a)(1)(B) the government had to prove that he acted with knowledge or reckless disregard of the fact that the aliens he transported were in this country illegally, Torres' earlier convictions for illegal entry were probative as to his knowledge of the aliens' illegal presence. Memorandum and Order. This reasoning is supported by *Garot*, 801 F.2d at 1247, where we upheld the trial court's admission, albeit as "bad acts" rather than prior crimes, because the evidence was relevant to proof of scienter as required under the crimes for which the defendant was tried.

■ The record also supports the trial court's determination that the probative value outweighed the prejudicial effect of the evidence. The jury was aware of the fact that Torres entered the country illegally through his presentation of evidence regarding his participation in the amnesty program. "Evidence of his prior convictions was therefore not the only evidence which the jury heard that indicated that the defendant had previously acted illegally." Memorandum and Order. We are not persuaded by Torres' argument that he was unduly prejudiced by the challenged evidence, and hold the trial court, with proper limiting instructions, properly permitted the jury to consider the evidence of Torres' prior convictions.

AFFIRMED.

---

6. Instruction No. 16 reads as follows:
    There has been evidence presented relating to other possible unlawful acts and conduct of the defendant with respect to the defendant's illegal entry into the United States, other than the specific offenses with which he is charged and is on trial. You are instructed that this evidence has been admitted only for the limited purpose of showing the defendant's knowl-

edge or reckless disregard, if any, of the fact that the alien named in each count of the Indictment was in the United States illegally. Such evidence of unlawful acts of a like or similar nature may not be considered by you as proof the defendant is guilty of the offenses charged, but is relevant and may be considered by you only for the limited purpose I have just stated.