**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AGUEDO MERBIN GARCIA-
MARTINEZ,

      Plaintiff-Appellant,

    v.

CITY AND COUNTY OF DENVER,
DENVER POLICE DEPARTMENT,
TOM SANCHEZ, in his official
capacity, COVEY HALL, in his
official and personal capacity,
ABELINO GUTIERREZ, in his
official and personal capacity, JAIME
CASTRO , in his official and personal
capacity, JOSHUA NUTTER, in his
official and personal capacity, and
CHRISTIAN BLESSING, in his
official and personal capacity,

      Defendants-Appellees.

No. 03-1069

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 01-MK-802 (MJW))**

---

Eugene G. Iredale, San Diego, California, for Plaintiff-Appellant.

Thomas S. Rice (Seth A. Rider with him on the brief), Senter Goldfarb & Rice,
L.L.C., Denver, Colorado, for Defendants-Appellees Covey Hall and Christain
Blessing.

Jonathan A. Cross, Cross, Sands & Sares, Denver, Colorado, filed a brief for Defendant-Appellee Abelino Gutierrez.

---

Before **LUCERO** , Circuit Judge,   **BALDOCK** , Senior Circuit Judge   , and **TYMKOVICH** , Circuit Judge.

---

**TYMKOVICH** , Circuit Judge.

---

Aguedo Merbin Garcia-Martinez brought a civil rights action under 42 U.S.C. § 1983 (2000), alleging that Denver police officers used excessive force in arresting him following a high-speed chase through the streets of Denver in August 1999.  Garcia-Martinez, a Honduran who had been in this country illegally, returned to Honduras prior to trial.  Fearing arrest if he returned, Garcia-Martinez failed to appear at trial, and, instead, sought to introduce his deposition in lieu of live testimony.  The district court denied this request.

After a jury found in favor of the police, he appealed, raising two issues: (1) Whether a plaintiff who refuses to attend trial may introduce his deposition in lieu of live testimony under Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804; (2) Whether the district court erred in failing to admit evidence that several of the defendant police officers had been disciplined for violations of police department procedures arising from the arrest.  Taking jurisdiction under 28 U.S.C. § 1291 (2000), we answer both inquiries in the negative and AFFIRM.

I.  Facts

On August 23, 1999, Denver Police Department ("DPD" or "Police Department") officers engaged in a high-speed chase of a Toyota 4Runner through rush hour traffic in downtown Denver and surrounding neighborhoods. The chase began after drug enforcement officers learned that the driver, Eduardo Morales, and his passenger, Garcia-Martinez, might be armed and in possession of a large amount of cocaine. During the seven-mile pursuit the officers saw several items, including what later turned out to be drugs, being thrown from the vehicle by Garcia-Martinez. When the officers finally cornered the vehicle in a dead-end alley, they arrested both Morales and Garcia-Martinez. This arrest was captured on video by a local television station.

Garcia-Martinez claims that three DPD officers, Abelino Gutierrez, Christian Blessing, and Covey Hall, used excessive force during the arrest by unnecessarily striking him with the butt of a gun and wrestling him to the ground. The officers maintain that Garcia-Martinez ignored verbal commands to exit the vehicle and physically resisted arrest, making their actions proper.

Morales and Garcia-Martinez were charged with conspiracy to possess cocaine. After the district court granted Morales's motion to sever trial, Garcia-Martinez proceeded alone to trial, and in August 2000 a jury found him not guilty. Because Garcia-Martinez was in the United States illegally at the time of his arrest, the court released him to the custody of Immigration and Naturalization

-3-

Services (now the Citizenship and Immigration Services), which deported him to his home country of Honduras.

Garcia-Martinez unlawfully returned to the United States shortly after this deportation. In May 2001, after his reentry into the United States, he filed suit under 42 U.S.C. § 1983 against the City and County of Denver; the Police Department ; Tom Sanchez, the Chief of Police, in his official capacity; and the officers present at his arrest, including Officers Gutierrez, Blessing, and Hall, in their individual and official capacities, alleging that the officers had used excessive force.

The district court eventually dismissed all claims except the excessive force allegations against Gutierrez, Blessing, and Hall in their individual capacities . On January 23, 2003, a jury returned a verdict in favor of these individual defendants. Garcia-Martinez now appeals, arguing that the district court made two incorrect legal rulings that frustrated his ability to present his case.

## II. Failure to Admit Deposition Testimony

Garcia-Martinez's first argument is that the district court should have admitted his deposition testimony under Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 because he was "unavailable" at the time of trial. We review the district court's decision disallowing the deposition testimony for abuse of discretion, *Coletti v. Cudd Pressure Control* , 165 F.3d 767, 773 (10th

Cir. 1999), and the district court's interpretation of the federal rules de novo.

*United States v. Medina-Estrada*, 81 F.3d 981, 986 (10th Cir. 1996).

*A.     Procedural Background*

The procedural background is important to our review of this argument.  In September 2001, Garcia-Martinez gave a deposition in preparation for trial on his § 1983 claims.  Later, after the completion of discovery but before trial, a magistrate judge presided over a mandatory settlement conference.  According to Garcia-Martinez on appeal, while he and his counsel were alone with the magistrate judge during the conference, the judge asked Garcia-Martinez about his immigration status.  When the magistrate judge discovered that Garcia-Martinez was an illegal alien, he told Garcia-Martinez that he risked being arrested and imprisoned if he showed up to trial.  He recommended that Garcia-Martinez settle the case.  The record also shows, however, that the magistrate judge told the defendant that the court would not do anything to precipitate Garcia-Martinez's arrest at trial.  Garcia-Martinez, who was then under a standing deportation order, returned to Honduras shortly thereafter.

Prior to trial in January 2003, Garcia-Martinez's attorney designated and submitted portions of Garcia-Martinez's deposition testimony to the district court. Garcia-Martinez's attorney claimed this testimony should be admitted at trial under the Federal Rules of Civil Procedure and the Federal Rules of Evidence

because Garcia-Martinez was out of the country and therefore unavailable for trial. In response, the defendants submitted a counter-designation of the deposition testimony, as well as a motion in limine opposing the admission of the deposition testimony, arguing that Garcia-Martinez was not "unavailable" under Federal Rule of Civil Procedure 32(a)(3)(B) because he had procured his own absence by voluntarily leaving the country.

The district court heard arguments on this issue during the first day of trial. The judge concluded that the deposition was inadmissible because Garcia-Martinez procured his own unavailability. The court rejected counsel's argument that Garcia-Martinez faced the Catch 22 of choosing between staying in the United States for trial and risking imprisonment or leaving the United States and losing the opportunity to testify at trial. The court observed, "I have not been presented with any authority for the proposition that there is actually no way for him to obtain a temporary visa in order to come into this country for purposes of attending this hearing." The court thus concluded that Garcia-Martinez's "decision not to attend trial, even if it was for the espoused reason that he was afraid of the consequences that he might suffer for remaining in the United States illegally, [was] not near or close to justifying a determination that he [was] unavailable for the purposes of using his deposition."

We conclude that the district court did not abuse its discretion in applying Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 to these facts.

B.     *Federal Rule of Civil Procedure 32(a)(3)*

Deposition testimony is ordinarily inadmissible hearsay, although Rule 32(a) creates an exception to the hearsay rules. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962–63 (10th Cir. 1993). Under Rule 32(a):

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, *unless it appears that the absence of the witness was procured by the party offering the deposition. . . .*

Fed. R. Civ. P. 32(a)(3) (emphasis added). The proponent of the deposition bears the burden of proving that it is admissible under Rule 32(a). *Angelo*, 11 F.3d at 963; *see also Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) ("The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met.").

In applying the rule, we start with its plain meaning. "[T]he starting point is always the language of the [rule] itself. If the language is clear and unambiguous, the plain meaning of the [rule] controls." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) (internal citation omitted). The plain meaning of "procure" in Rule 32(a) is "to bring about" or "to cause to

-7-

happen." *Webster's Third New International Dictionary* 1809 (Philip Babcock Gove, ed., 2002).

The next question is whether a party's voluntary absence from trial fits within the plain meaning of the rule. It does not. While this circuit has yet to address a plaintiff's voluntary absence at trial in connection with a proffer of deposition testimony, other circuits and commentators have concluded that the rule requires the proponent to "demonstrat[e] to the trial court that he ha[s] not procured his own absence." *Fairfield 274-278 Clarendon Trust v. Dwek*, 970 F.2d 990, 995 (1st Cir. 1992) (citations omitted). *See also Vevelstad v. Flynn*, 230 F.2d 695, 702 (9th Cir. 1956) (noting that since the party "voluntarily left the United States, and as the trial court found, willfully absented himself, the court's refusal to consider the deposition may well have been in accordance with the provisions of the Rule."); 7 James Wm. Moore, et al., *Moore's Federal Practice* § 32.24[5] (3d ed. 2003). Other cases hold that the mere fact a party is more than 100 miles from the courthouse does not require the district court to automatically admit a party's deposition. *See Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991). Rather, the trial court "may consider all the circumstances relating to the party's absence to determine whether the deposition may be used." Moore, *supra*; *see also In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493, 1501-02 (D. Colo.

1989).  The preference for a witness's attendance at trial is axiomatic.  When the "key factual issues" at trial turn on the "credibility" and "demeanor" of the witness, we prefer the finder of fact to observe live testimony of the witness. This is especially true when the witness is the plaintiff.  Moore, *supra*.

All of these authorities stand for the proposition that the trial court retains significant discretion in applying Rule 32 to an absent party.  In the face of these authorities, Garcia-Martinez argues that he did not "procure" his own absence at trial because he did not leave the country in order to benefit from his own unavailability.  However, after hearing testimony from both attorneys regarding the circumstances of Garcia-Martinez's departure, the court concluded that Garcia-Martinez brought about his own absence from trial by choosing to leave the country and thus he was not eligible to invoke Rule 32(a).  We agree.

Applying Rule 32 to the facts at hand, it is obvious that Garcia-Martinez meant to cause his own absence at trial.  In response, Garcia-Martinez suggests a "good faith" exception to the application of the rule should apply.  Even if such an exception is available, we cannot invoke it on this record.  While he may have had good reasons for failing to appear at trial, it is abundantly clear from this record that Garcia-Martinez made scant effort to make other arrangements to appear temporarily for trial or to make himself available for remote testimony.  In these circumstances, the proponent of the testimony—plaintiff Garcia-

Martinez—procured his own absence from trial without offering evidence that he could not return to the United States or that he had no alternative means of testifying.

We do not establish a per se rule that any plaintiff who procures his own absence from trial is not eligible to seek refuge in Rule 32.[1]  We cannot conclude here, however, that the district court abused its discretion in granting the defendants' motion in limine.

C.    *Federal Rule of Evidence 804(a)*

Federal Rule of Evidence 804 provides an independent ground for the admission of deposition testimony.  Rule 804(b)(1) permits a party to admit testimony by deposition as an exception to the hearsay rule when the declarant is "unavailable as a witness."  A declarant is "unavailable" if he or she

> (5) is absent from the hearing and *the proponent of a statement has been unable to procure the declarant's attendance* . . . by process or other reasonable means.
>
> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

---

[1] We have found no authority suggesting such an exception exists.  While the facts of this case do not warrant the creation or application of such an exception, we express no opinion as to whether such an exception exists or, if not, should be created.

Fed. R. Evid. 804(a) (emphasis added). The party wishing to introduce a deposition under this rule bears the burden of showing unavailability. *United States v. Eufracio-Torres*, 890 F.2d 266, 269 (10th Cir. 1989).

Garcia-Martinez claims he was unavailable for trial because his absence was not "for the purpose of preventing the witness [himself] from attending or testifying," Fed. R. Evid. 804, but rather simply to avoid arrest. There are several problems with this claim. First, "[t]he sponsor of a declarant's former testimony may not create the condition of unavailability and then benefit therefrom." *United States v. Kimball*, 15 F.3d 54, 55–56 (5th Cir. 1994); *see also United States v. Peterson*, 100 F.3d 7, 13–14 (2d Cir. 1996). Secondly, although the federal rules provide a mechanism for the admission of deposition testimony, they do not alter the "long-established principle that testimony by deposition is less desirable than oral testimony." *Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972); *see also In re Air Crash Disaster*, 720 F. Supp. at 1502. "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Salsman*, 466 F.2d at 79 (quoting *Napier v. Bossard*, 102 F.2d 467 (2d Cir. 1939)).

In applying the rule, we look at two factors to determine "unavailability." The first factor is whether the proponent was able to "procure" the witness's attendance "by process or other reasonable means." Garcia-Martinez does not

literally meet this requirement since he voluntarily failed to return to Colorado for trial. The second factor looks to whether the absence is "due to the procurement or wrongdoing" of the proponent of the testimony. Garcia-Martinez also does not literally meet this requirement, since his absence at trial was calculated.

Confronting the rule's plain language, Garcia-Martinez again asks us to apply a "good faith" exception. His argument is that the absence from trial must be for the "purpose of preventing the witness from attending or testifying." Fed. R. Civ. P. 804(a). Since his absence was due to exigent circumstances beyond his control, the court should find him "unavailable" under the rule. We disagree that he is entitled to an exception on this record.

As with his Federal Rule of Civil Procedure 32 argument, Garcia-Martinez has put forth no evidence showing that alternative options for testifying had been exhausted. He made no attempt to obtain a temporary visa to reenter the country for the limited purpose of attending trial or show that an effort to do so would certainly have been denied. Nor did he demonstrate that alternatives to live testimony, such as a testimony via video-conferencing, were unavailable. The only explanation of Garcia-Martinez's absence from trial comes from statements of his attorney to the district court at the evidentiary hearing. Thus, Garcia-Martinez has not demonstrated that "a good faith effort was made to obtain the declarant's presence at trial using reasonable means." *United States v. Fuentese-*

-12-

*Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991) (citing *Eufracio-Torres*, 890 F.2d at 269)*; see also Peterson*, 100 F.3d at 13–14 (holding that a party who invokes his Fifth Amendment privilege is not unavailable under Rule 804(a)); *Kimball*, 15 F.3d at 55–56 (same).

Accordingly, we conclude the district court did not abuse its discretion in refusing to admit Garcia-Martinez's deposition at trial under Rule 804.

### III. Admission of Officers' Disciplinary Records

Garcia-Martinez's second argument is that the district court should have admitted evidence that the DPD disciplined   defendant-appellees Gutierrez and Hall for their failure to comply with Police Department procedures during his arrest.  Because "a trial court has broad discretion to determine whether evidence is relevant" and to exclude irrelevant evidence, we review the district court's decision to exclude the officers' disciplinary records for an abuse of discretion. *Hill v. Bache Halsey Stuart Shields, Inc.*, 790 F.2d 817, 825 (10th Cir. 1986); *see also Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002).

A local news station filmed and broadcasted the high-speed chase and arrest of Garcia-Martinez and Morales from a helicopter.  Using this news coverage, the DPD conducted an internal investigation of the actions of the officers involved, including Gutierrez, Blessing, and Hall.  Subsequently, the

DPD disciplined both Hall and Gutierrez for careless handling of a firearm during the arrest and Gutierrez alone for improperly approaching the vehicle.

Before trial, Gutierrez and Hall filed a motion in limine to exclude their disciplinary records on the grounds that whether they were disciplined for violations of Police Department procedures was not relevant to whether they used excessive force. Garcia-Martinez argued in response that the records were relevant to whether the officers used excessive force, to impeach the officers' testimony that they acted in accordance with accepted procedures, and to show that the officers' actions escalated the situation to one in which force became necessary.

The district court granted the defendants' motion, concluding that evidence of violations of police procedures was not relevant to the issue of excessive use of force. It also found the evidence was not relevant to impeach the officers' testimony that they acted in accordance with procedures because the defendants did not make or adopt the statements in the records. Finally, it determined that Garcia-Martinez's attempt to introduce the records to show the officers' actions escalated the situation was an attempt to introduce the records as expert testimony without meeting the foundational prerequisites for expert testimony.

On appeal, Garcia-Martinez raises the same arguments he made in the trial court. He first argues the records were relevant because they showed the

defendants did not act within accepted department procedures.[2]  Evidence is relevant if it has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Garcia-Martinez fails to show that the procedures involved the alleged excessive force at issue in his case and it appears that the procedures at issue only dealt with general weapon safety and officer efficiency.[3]  Therefore, the district court did not abuse its discretion by concluding that the disciplinary records were not relevant to the § 1983 claim.

Next, Garcia-Martinez contends the disciplinary records were relevant as impeachment evidence since the police officers presented testimony that they acted in accordance with Police Department procedures.[4]  While his argument is not entirely clear, Garcia-Martinez appears to argue that the records impeach the officers' testimonies as prior inconsistent statements.  *See* Fed. R. Evid. 613(a).  However, implicit in the use of prior inconsistent statements to impeach is the requirement that the impeached witness actually made the prior statement.  We

[2] It should be noted that neither party has provided this court with copies of the actual disciplinary records, so our review of the record regarding this issue is limited to reviewing the district court transcript.

[3] We note that Garcia-Martinez failed to provide either the district court or this court with copies of the procedures at issue.

[4] For instance, at trial Garcia-Martinez's counsel asked Gutierrez, "And you believe that you behaved in a manner consistent with the training you believed [sic] as a Denver police officer?"  Gutierrez responded affirmatively.

agree with the district court that the records are not statements of the officers themselves, but rather statements made by others responsible for the investigation and preparation of the records. As such, they are not admissible as prior inconsistent statements. Accordingly, the district court correctly held that the fact the DPD disciplined the officers for violating firearms procedures was not admissible under Rule 613 to impeach the officers' testimony that they acted in accordance with police procedures.

Garcia-Martinez's third argument is that the officers adopted the allegations contained in the disciplinary records by signing, "I accept the recommended penalty." The district court found, and we agree, that the statements in the records were not adopted by the officers because they declined to admit any wrongdoing, and only accepted the penalty imposed by the Department, not the facts underlying it. *See United States v. Coppola*, 526 F.2d 764, 769 n.2 (10th Cir. 1975) (holding that a statement is only admitted as an adoptive admission "if it appears the accused understood and unambiguously assented to those statements").

Finally, Garcia-Martinez maintains that the disciplinary records show that Officer Gutierrez improperly approached the vehicle, thus supporting an inference that Officer Gutierrez caused the situation to escalate and created the need to use force. The district court noted that Garcia-Martinez's argument appears to be an

attempt to introduce the disciplinary records as opinion evidence "in lieu of expert testimony." We agree. Even if such evidence were marginally relevant to the issue of excessive force, Garcia-Martinez is not entitled to admit the documents without first laying an adequate foundation for a sponsoring witness to testify regarding the documents. This he did not do. Thus, Garcia-Martinez did not fulfill the requirements of Rule 702, *see Black v. M&W Gear Co.*, 269 F.3d 1220, 1237 (10th Cir. 2001), and we cannot conclude the district court abused its discretion in failing to admit these records.

## IV. Conclusion

We affirm the district court's refusal to admit the plaintiff's deposition in lieu of live testimony and defendants' disciplinary records.

03-1069, <u>Garcia v. City and County of Denver</u>

**LUCERO**, J. dissenting:

I respectfully **DISSENT** from Section II of today's opinion, on the issue of Garcia's [1] availability for trial. [2] I neither agree that he procured his own absence from trial, nor that he made an insufficient showing of a good-faith effort to be available for live testimony. His absence was procured by the United States government. In August of 2000, officers of the Immigration and Naturalization Service deported Garcia to Honduras, and at all times relevant to this action, he has remained under a standing deportation order. It is true he left the country on his own after filing the present action, but the law is no less compulsory to someone who complies with its dictates under fear of reprisal than for someone who waits for the corrective power of the state to do it for him.

As to Garcia's good-faith effort to be available at trial, the majority gives great weight to his failure to "attempt to obtain a temporary visa to reenter the country," but this is without legal significance. It is a fact not reasonably disputable that someone in Garcia's position (a male with a history of unlawful entries, an arrest, and a previous violation of a standing deportation order) would

---

[1] I refer to the plaintiff appellant in the same manner he refers to himself in the briefs filed before us.

[2] I agree with the majority's holding that the district court did not abuse its discretion in not allowing in evidence of defendant officers' disciplinary history, and therefore **JOIN** Section III of the opinion.

have been denied.  Fed. R. Evid. 804(a) "does not require the [party offering testimony] to utilize an absolute means of attempting to assure the appearance of a witness, only a reasonable means." United States v. Eufracio-Torres, 890 F.2d 266, 270 (10th Cir. 1989).  The federal rules cannot have envisioned that a party break the law and risk arrest to testify, nor that he tilt at windmills to show that he tried.

Today's decision denies Garcia of the only realistic opportunity he had to present his case.  It deprives him of his day in court and risks granting state officials impunity for abuses of illegal immigrants who leave or are deported between filing of suit and trial.  Decisions of the lower court reviewed for abuse of discretion must be overturned in cases of "manifest injustice." Pandit v. American Honda Motor Co., 82 F.3d 376, 382 (10th Cir., 1996).  This to me is such a case, and I therefore respectfully **DISSENT** from the section II of today's opinion.