NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2474
_____

UNITED STATES OF AMERICA

v.

QUADIR BOOKER,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cr-759)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2010

Before:  RENDELL, JORDAN, and GARTH, *Circuit Judges*.

(Filed : March 29, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Quadir Booker appeals from a May 11, 2009 judgment of the United States

District Court for the District of New Jersey sentencing him to sixty-three months'

imprisonment and three years of supervised release based on his conviction for being a

felon in possession of a gun, in violation of 18 U.S.C. § 922(g). For the following reasons, we will affirm.

## I. Background

### A. *Factual Background*

On the night of June 8, 2007, at least seven detectives[1] from the Newark, New Jersey, Police Department were patrolling the city in unmarked cars. As they drove past a residence on South 10th Street, they smelled marijuana and observed Booker and others standing outside. After the detectives exited their cars and identified themselves, Booker tossed his marijuana cigarette to the ground and began walking up the steps of the building. Although the detectives ordered Booker to stop, he continued up the steps. According to one of the detectives, Michael Morgan, Booker then pulled a silver revolver from his waist band and threw it into the foyer of the building. Detective Morgan shouted "gun" to alert his fellow detectives.

As Detective Morgan and Detective Elias Garcia went to restrain Booker, Detective Garcia saw a gun on the floor in the foyer. At that point, another man, Leron April, came down the stairs, yelling obscenities at the police. After April ignored orders not to walk into the foyer, he and Detective Garcia ended up in a scuffle that resulted in the gun being kicked outside. April was arrested for resisting arrest and obstruction of an

---

[1]At one point, the record indicates that there were eight detectives (*see* App. at 99), while at another it appears that there were only seven (*see* App. at 235).

investigation. Then, one at a time, two of April's brothers also appeared, each engaging in the same kind of obscenity-laced tirade against the police, and they too were arrested and subsequently charged with resisting arrest and obstructing an investigation. Finally, the April brothers' mother, Rasheida April, arrived home and asked the detectives why her sons were being detained. The April brothers' arrests became important to Booker's case because of the answer the police allegedly gave to Ms. April's question. According to Ms. April, when she asked an officer why her sons were being detained, the officer told her that "[t]hey find a gun and they want to know whose gun it is." (App. at 23.)

On September 20, 2007, a federal grand-jury returned an indictment charging Booker with a § 922(g)(1) violation.

B.     *Evidentiary Rulings*

On September 9, 2008, the jury trial in Booker's case began. He called Ms. April as a defense witness, and she testified that, although she could not remember the exact officer who spoke with her, one of the officers told her that "[t]hey find a gun and they want to know whose gun it is."[2] (*Id.* at 23.) The defense relied on that testimony in closing argument. The jury was ultimately unable to reach a verdict, and the proceedings thus ended in a mistrial.

---

[2]Another defense witness, Malik Timmons, was at the scene the night of the incident, and testified that the officers asked him whether the gun belonged to him. He testified only at Booker's first trial.

A second trial began on January 27, 2009. In advance of the retrial, the government filed a motion *in limine* to preclude Ms. April from testifying about what the unidentified officer said to her, as she had in the first trial. The government argued that the statement was hearsay under Federal Rule of Evidence 801(c) and that it did not fall within an exclusion or exception to the prohibition against hearsay contained in Rule 802. Booker opposed the motion, arguing that Ms. April's testimony concerned a question posed by the officers, rather than an assertion, and this did not constitute a hearsay "statement" under Rule 801(c). Booker further argued that, even if the officer's remark was an assertion, it was admissible as an admission of a party-opponent under Rule 801(d)(2). At argument on the motion, the government responded that Ms. April, if called, would testify about what some officer allegedly said to her, and that her testimony thus constituted an assertion or statement rather than a question. Without directly addressing the Rule 801(d)(2) argument, the Court ruled that Ms. April could testify as to what she observed on the evening of the incident, but not about "which officer said this and which officer said that."[3] (*Id.* at 134.) The Court also said it would revisit the issue during trial.

At trial, Ms. April testified as follows: "When I went first, I tried to ask questions, but they [the police] say I have to wait because they find a gun and they try to figure out

---

[3]The Court first suggested that the statements could come in due to the availability of the officers for cross-examination at trial but later appeared to abandon that point of view.

whose gun it is." (*Id.* at 373.) The government then renewed its objection, which the Court sustained. Ms. April then testified to a comment she had made, rather than what the police officers told her, namely, "I tell the kids: Whoever gun it is, you ought to tell the police so we can get this over and done." (*Id.* at 375.) The defense then argued that Ms. April's original statement about what the police officer told her should be considered by the jury as impeachment evidence against the officers who testified, specifically under Rule 613 of the Federal Rules of Evidence as a prior inconsistent statement made by a witness. The Court sustained the government's objection and did not hear further argument on whether the statement was admissible under Rule 613.

C.      *The Government's Closing Statement*

At the close of trial, the prosecutor gave a summation in which he argued to the jury that "the defense has tried to get you [the jury] to focus on things other than the central facts of this case." (*Id.* at 51; *see also id.* at 52 ("[T]he defense was hoping that you ... wouldn't focus on Quadir Booker and that gun."), 54 ("[W]hy has the defense been so anxious to try to shift your focus away from the central facts of this case?"), 58 (stating that the defense "want[s] you to be distracted and imaginative.").) He also attacked the defense's theory of the case, which he characterized as asserting that there was a conspiracy to frame Booker. (*Id.* at 53-55, 58.)

Defense counsel then moved for a mistrial, arguing that the prosecutor's closing improperly "impugn[ed] the motives of defense counsel." (*Id.* at 59.) The motion was denied.

In his rebuttal summation, the prosecutor addressed defense counsel's argument that it was implausible that the detectives, who were primarily concerned with violent crimes, would have considered marijuana a serious offense in Newark.

> Defense counsel said, and you heard the mocking and the cross examination. These detectives are out here in the worst, most dangerous areas of the city. They're there to suppress violent crime, murders, shootings, and you heard them mocking marijuana. You care about marijuana? Well, you heard what Detective Simpkins said about that. He said: We get complaints from people saying there are groups of people standing in front of my house, smoking marijuana, doing various things. So when they see a group of men standing in front of a house smoking marijuana, they go over to make sure those people live there, and they belong there.
>
> Now, ladies and gentlemen, the testimony may have been that these are the worst, most dangerous areas of the city, but are these detectives wrong that even if you live in the most dangerous area of the city, you deserve not to have that in front of your house? Are they wrong about that? Do you forfeit your right if you live there to not have that going on in front of your house?

(*Id.* at 69-70.)

The jury returned a guilty verdict, and, on May 7, 2009, the Court sentenced Booker, as earlier noted, to sixty-three months' imprisonment and three years of supervised release. Booker timely appealed, requesting that we vacate his conviction and remand the case for a new trial.

-6-

## II. Discussion[4]

Booker advances two arguments on appeal. First, he argues that the prosecutor's closing remarks rose to the level of prosecutorial misconduct, as they improperly impugned defense counsel's integrity and thus prevented a fair trial. Second, he argues that the District Court erred in prohibiting Ms. April from testifying about what one of the police officers said to her on the night of June 8, 2007. His argument here is two-fold. First, he contends that the statement is admissible as substantive evidence under Rule 801(d)(2) as an admission by a party-opponent. Second, he says that the statement is admissible as impeachment evidence under Rule 613.

We review a District Court's denial of a motion for mistrial based on prosecutorial misconduct for abuse of discretion. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). A District Court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007).

### A. *Prosecutorial Misconduct*

Booker claims that "[t]he government intentionally sought to undermine the integrity of the defense" by accusing defense counsel of attempting to "distract" the jury with conspiracy theories and by mocking witnesses. (Appellant's Op. Br. at 16.) "To find that the court abused its discretion in failing to order a mistrial for prosecutorial

---

[4]The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

misconduct, we must first be convinced that the prosecution did in fact misconduct itself." *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007). In making that assessment, we are mindful that attacking an opponent's arguments, poking holes in trial tactics, and exposing strategic flaws is a major purpose of summation. *United States v. Lore*, 430 F.3d 190, 213 (3d Cir. 2005).

Here, the prosecutor's comments that defense counsel's theory was an attempt to "distract ... from the central facts of this case" (App. at 51), do not amount to misconduct. *See Rivas*, 493 F.3d at 139 (stating that prosecutor's summation remark that defense counsel's "job is to take your focus off the issue" was proper). Indeed, Booker's primary defense was that the detectives pinned the gun possession on him after learning that he was a convicted felon. The prosecutor's challenge to the plausibility of Booker's defense was within the bounds of the battle one expects at trial. Rather than attack the character of defense counsel personally, as Booker asserts, the prosecutor's comments were aimed at defense counsel's theory of the case. (*See* App. at 55 ("But the defense's theory is these [detectives] all got together and framed Quadir Booker. But there's no evidence to support that.")) Because such comments fall within the scope of allowable argument, Booker has failed to demonstrate "that the prosecution did in fact misconduct itself." *Rivas*, 493 F.3d at 139. Accordingly, we find no error in the District Court's decision not to grant a new trial.

Booker also contends that the prosecutor's rebuttal summation constituted prosecutorial misconduct. Because he failed to object to those comments at trial, we must confine our review to an examination for plain error. *United States v. Brown*, 254 F.3d 454, 462 (3d Cir. 2001). Plain error analysis requires us to consider the comments in the context of the entire record. *United States v. Young*, 470 U.S. 1, 16 (1985). We may reverse only if our review of the record "reveal[s] 'egregious error or a manifest miscarriage of justice.'" *Brennan*, 326 F.3d at 182 (quoting *Brown*, 254 F.3d at 458).

In his summation, defense counsel reiterated the position that the detectives had questionable motives for stopping at the scene: "And you've heard Detective Simpkins saying all the bad things they are out there trying to proactively prevent. And on this day, at this time, they decide marijuana is bad in Newark, New Jersey ... . I want you to use your common sense." (App. at 60.) The prosecutor responded by arguing on rebuttal that the officers indeed had a legitimate reason to be concerned about marijuana because they often received complaints about marijuana smoking, and those complaints deserved attention, regardless of the pressing need to address violent crimes.

The prosecutor's overall response to this line of argument did not constitute prejudicial error. Defense counsel sought to raise doubts in the juror's minds about the detectives' honesty, and thus invited the prosecutor to argue that the detectives' motives were sound. *See Werts v. Vaughn*, 228 F.3d 178, 200 (3d Cir. 2000) (no error where the prosecutor's "comments were invited and ... went no further than required to 'right the

scale'"). While the prosecutor perhaps should not have accused defense counsel of "mocking" witnesses or "mocking marijuana" because that characterization arguably "was not necessary to answer defense counsel's [argument,]" *Young*, 470 U.S. at 17, those two fleeting references to "mocking" were not sufficient to unfairly prejudice the jury and therefore do not warrant reversal. *See, e.g.*, *Lore*, 430 F.3d at 214 (prosecutor's comments during rebuttal summation that defense counsel was "disingenuous" and guilty of "clever lawyering" were not plain error because they were part of a relevant response to defense counsel's closing); *Gov't of V.I. v. Joseph*, 770 F.2d 343, 351 (3d Cir. 1985) (prosecutor's "ill-advised" comments, which spanned "five paragraphs in a fourteen page summation," were not pervasive enough to require reversal). Viewed in context, the remarks were likely understood as merely countering defense counsel's assertion that the detectives had no good reason to investigate a marijuana offense. Accordingly, any error in the prosecutor's rebuttal summation cannot be said to have resulted in a miscarriage of justice.

B.    *Evidentiary Rulings*

As previously noted, Ms. April was prepared to testify at trial that a police officer responded to her questions about her sons by telling her that a gun had been found and that they, the police, were "try[ing] to figure out whose gun it was." (App. at 373.) After the Court sustained the government's objection that the testimony constituted inadmissible hearsay, defense counsel argued that it was admissible for impeachment

purposes under Rule 613. The Court sustained that objection as well. Thus, Ms. April was only permitted to testify that "I tell the kids: whoever gun it is, you ought to tell the police so we can get this over and done." (*Id.* at 375.) Booker contends that the District Court erred in finding that the statement was neither an admission of a party-opponent under Rule 801(d)(2), nor admissible as impeachment evidence under Rule 613.[5] We agree with the District Court that the statement is not admissible under either of those evidentiary theories.

### i. *Admissions of a Party-Opponent*

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). However, the Rules define as non-hearsay an admission by a party-opponent, which includes "(A) the party's own statement, in either an individual or a representative capacity or ... (D) a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2). Booker argues that Ms. April's statement falls within the quoted definition of non-hearsay because she was testifying

---

[5]Booker also suggests that the statement posed no hearsay problem, as the declarant (one of the police officers) was available to testify. This argument has no merit. Rule 802 provides that "[h]earsay is not admissible except as provided by these rules ... ." FED. R. EVID. 802. Booker thus had the burden of articulating how the statement was either excluded from the definition of hearsay or how it fell into an exception to the hearsay rule, and he has not provided any persuasive argument to meet that burden.

about a statement made by a law enforcement officer, who is "an agent working within the scope of his authority and in a representative capacity."[6] (Appellant's Op. Br. at 20.) Here, the party-opponent is the United States. The party who allegedly made the statement, a police officer employed by Newark, New Jersey, is not an agent of the United States for purposes of Rule 801(d)(2). Indeed, several courts, including ours, "have held that statements by police officers or other law enforcement officials are not admissible on an admissions theory as substantive evidence against the sovereign in a criminal prosecution." *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993); *see also United States v. Arroyo*, 406 F.3d 881, 888 (7th Cir. 2005) (noting that "government agents are not party-opponents for purposes of Rule 801(d)(2)"); *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) ("There is no authority for the proposition that the prosecution is a 'party' against whom [Rule 801(d)(2)] evidence can be offered."). Further, Booker has failed to offer any factual support for the existence of an agency relationship between the United States and the New Jersey detectives whose statement he

---

[6]The government asserts that Booker waived his 801(d)(2) arguments by not raising them at trial when the government objected to Ms. April's testimony, but instead arguing that the evidence should be admissible as impeachment evidence. Although there is some support for the government's position that Booker abandoned his *in limine* arguments by choosing to rely exclusively on Rule 613 at trial, *see United States v. Silva*, 554 F.3d 13, 20 n.8 (1st Cir. 2009) (defendant likely waived the argument that a prior inconsistent statement should have been admitted for its truth where he offered it at trial solely for impeachment pursuant to Rule 613(b)); *see also United States v. Iglesias*, 535 F.3d 150, 158 (3d Cir. 2008) (a party fails to preserve an evidentiary issue for appeal by not making a timely, specific objection), we need not resolve the issue of waiver because we hold that Booker's Rule 801(d)(2) argument has no merit.

sought to admit. *See Lippay*, 996 F.2d at 1498 (explaining that an agency relationship under Rule 801(d)(2) requires the party-opponent to personally supervise the declarant's work on a continuing basis). Because a statement allegedly made by a Newark police officer cannot bind the United States in a criminal prosecution, Ms. April's testimony cannot be considered an admission of a party-opponent under Rule 801(d)(2).[7]

ii.    *Impeachment Evidence*

At trial, defense counsel pressed for Ms. April's testimony to be admitted under Rule 613(b), which provides that prior inconsistent statements may be admissible to impeach a witness.[8] *United States v. Stevens*, 935 F.2d 1380, 1393 n.17 (3d Cir. 1991). However, the decision about whether to admit or exclude testimony is left to the sound discretion of the trial judge. *United States v. Fallon*, 470 F.3d 542, 546 (3d Cir. 2006). Here, it cannot be said that the District Court abused its discretion in not allowing Ms. April to testify that an unidentified detective told her that the police were trying to figure out who owned the gun. First, the statements at issue are not inherently

---

[7]Nor can Ms. April's testimony come in under Rule 801(d)(1)(A), which provides that a prior inconsistent statement may be admitted for its truth if it was made orally under oath at a previous formal proceeding. The statement Ms. April sought to admit against one of the detectives was made during the incident on the night of June 8, 2007. Accordingly, it cannot be admitted as a prior inconsistent statement pursuant to Rule 801(d)(1)(A) because it was made neither under oath nor at a formal proceeding. *See Lippay*, 996 F.2d at 1497 n.7 (a prior statement made not under oath or at a proceeding or deposition was properly excluded under Rule 801(d)(1)(A)).

[8]There is some question as to whether this argument was preserved on appeal, as it surfaces with little mention in Booker's opening brief. Nevertheless, we address it on the merits.

inconsistent. *See United States v. Hale*, 422 U.S. 171, 176 (1975) (before "prior inconsistent statements may be used to impeach the credibility of a witness ... the court must be persuaded that the statements are indeed inconsistent"). The officer's statement to Ms. April that the police were trying to figure out "whose gun it was" is not necessarily inconsistent with the testimony at trial that the police never questioned the arrestees about who the gun belonged to.[9] The record reflects that at least seven detectives were on the scene by the time the incident unfolded; the one who allegedly made the statement to Ms. April could have been conferring with Detectives Morgan and Garcia, who observed Booker toss the gun, to determine possession or ownership.

Furthermore, and more significantly, Ms. April failed to identify who made the allegedly inconsistent statement. Thus, even if an inconsistency did exist, the foundation was not properly laid to introduce extrinsic evidence for impeachment. Rule 613(b) requires that a witness against whom the inconsistent statement is offered be "afforded an opportunity to explain or deny the same." *See United States v. Green*, 556 F.3d 151, 158 n.5 (3d Cir. 2009) (explaining that Rule 613(b) "is explicit that in order to 'prove up' the content of the inconsistent statement, [the declarant] must be confronted with it"). Here,

---

[9]Whether an inconsistency exists between the testimony that officers saw Booker toss the gun and Ms. April's testimony that an officer said they were still trying to figure out "whose gun it was" is not the question presented to us. It does not appear that that argument was made to the District Court. Rather, it seems that Booker contended that the alleged statement to Ms. April is inconsistent with police testimony that they never asked the arrestees who owned the gun. (*See, e.g.*, App. at 108-09 (Detective Martinez's testimony denying that the officers asked the arrestees about the gun.).)

Booker did not lay the proper foundation because Ms. April never identified the declarant. Although defense counsel confronted some of the detectives with the allegedly inconsistent statement, the record provided to us on appeal indicates that only four of the seven or eight detectives testified. Without the identity of the declarant, or even a sufficient effort to lay a foundation with the group of potential declarants, Booker simply did not meet the foundation requirement of Rule 613(b). *Cf. Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187, 1194-95 (10th Cir. 2004) (explaining that a statement was properly excluded under Rule 613 because the impeached witness did not "actually ma[k]e the prior statement"); *United States v. Barile*, 286 F.3d 749, 757-58 (4th Cir. 2002) (finding no proper foundation under Rule 613(b) where defendant could not show that the witness made the statement or adopted it). Accordingly, the District Court did not abuse its discretion in excluding Ms. April's testimony.

Finally, even if the testimony was erroneously excluded, the error was harmless because it did not affect a substantial right. *See United States v. Hardwick*, 544 F.3d 565, 574 (3d Cir. 2008) ("An error is harmless if it does not affect substantial rights of the defendant.") (internal quotation marks and citation omitted). As discussed above, the testimony could not have been admitted as substantive evidence. It therefore was of limited probative value because it would have served only to impeach a witness's credibility. Moreover, the jury heard defense counsel ask the detectives whether they questioned the arrestees about who owned the gun or whether they told Ms. April that

-15-

they were trying to discover who owned the gun. (*See* App. at 108-09, 259, 364-65.) Although Ms. April was not permitted to testify as such, defense counsel hinted at this impeachment to the jury during closing, stating "[Ms. April] was not permitted to tell you what a police officer said to her, but you heard what she said in response to the men that were out there: Tell them whose gun it is. Just tell them whose gun it is. You've got to connect the dots ... ." (*Id*. at 62.) Accordingly, any error in excluding Ms. April's testimony was harmless beyond a reasonable doubt.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed by the District Court.